THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARIO ESQUILÍN PARÍS, Defendant and Appellant.

No. CR-67-163.     Decided February 9, 1970.

*Rafael A. Rivera Cruz, Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

(ON RECONSIDERATION)

The Solicitor General has requested the reconsideration of the judgment rendered in the case at bar, which reversed

the one rendered by the Superior Court. We reversed on the ground that the prosecuting attorney had referred to the silence of defendant, against the provisions of § 11 of the Bill of Rights of our Constitution.

The State holds that we erred in applying the law to the facts. We set forth the facts again insofar as they are pertinent to the application of the above-mentioned constitutional provision.

"About 10:00 p.m. on August 30, 1966, a woman was waiting for an autobus at stop 12, Miramar. A young man invited her to board a light-colored automobile driven by him. She accepted to ride to stop 22. When they arrived there he did not stop and he went on to Hato Rey. The woman tried to jump from the automobile, but the speed prevented her. They came to a solitary place, in the area of the industrial development Las Tres Monjitas. There he stopped. He threatened her to get her consent to have sexual intercourse with him. She did not consent, but at the end she said she would consent if he let her out of the vehicle to take care of a need. She got out and when she thought he was not looking at her, she tried to run away asking for help, but he overtook her. He threatened her again and at the end she consented. Upon completion of the act she asked him to take her to a place where she could get transportation. He left her in Hato Rey, near a park where there was a traffic light. When she got off the car the light turned red and she had the opportunity to see the plate number and jotted it down." *People* v. *Esquilín París*, 96 P.R.R. 404 (1968). The prosecutrix supplied the police with the number of the license plate which, according to her, the automobile, driven by the person whom she alleges raped her, had. According to appellant's testimony the day of the trial, a peace officer went to defendant's house and invited him to go to the police station in connection with an investigation which was being performed as a result of the complaint filed. Appellant told the peace officer that he was

going to go with him so that they would take his testimony "because he did not know anything of what it was all about. . . ." On that occasion they did not go to the police station. He went the next day. A detective woman explained to him at the police station that a woman was complaining of a rape and "the only thing I argued was, well, lady, I really don't know anything about that." He continues testifying that later the prosecutrix arrived and the prosecuting attorney expresses himself thus: "Then, comes the lady, Fidia [the prosecutrix], and says, that is the one who raped me and she points at you." Appellant explains "I am talking facing María Ramírez [the detective] and this lady comes to where the judge is, and said, with my back to her, that is the man, that is the same man, and I turned and said, lady do you know me, and she said, no, but you know everything, and I told her, everything about what?" Then the prosecuting attorney inquired whether the detective woman had asked him where he had been the day of the events. Defendant answered in the negative and the prosecuting attorney asked him if he did not inform it. The prosecuting attorney insisted for the purpose of laying stress upon the fact that defendant had not raised at any moment during the investigation, nor during the preliminary hearing, the defense of alibi. Hereinafter we copy the cross-examination of the prosecuting attorney: ·

"Q—Then, tell me, the detective woman did not ask you where were you that day, August 30, 1966?

A—Nothing to that effect.

Q—Did you tell her, look, on August 30, 1966, at the time this lady says, that you tell me, that she alleges that I raped her, on that date and at that time I was visiting at John Doe's house.

A—I could not tell exactly the day because, to be more exact, you ask me about the 23d, where was I, and I cannot tell you because, really, I don't remember.

Q—But did you tell her that during the investigation, after that did they take you to the prosecuting attorney's office?

A—But they didn't ask me anything.

Q—Even though they did not ask you, you did not say, look lady, doña María, now I remember, now that I recall, that day I was visiting John Doe at nighttime.

A—They did not ask me that sort of questions.

Q—Did you say it without being asked?

A—Simply, I told her I did not know anything about that.

Q—On the contrary, you did not say it until today?

A—Yes, sir.

Q—And you say you did not remember at that moment?

A—Yes, sir.

Q—I must understand that you did not remember during all that time until the case was submitted to the judge?

A—Well ....

Q—The question was, did you remember during the investigation, until it was submitted?

A—Since this thing follows a trajectory.

JUDGE:

Answer the question, whether or not you remembered during the investigation?

A—No, sir.

Q—And did you think about that?

A—I was thinking all day, I kept thinking the same thing.

Q—And you did not tell the judge, to whom the case was submitted to determine probable cause in order to accuse you, you did not tell him what you told the gentlemen of the jury as to what had occurred, and what you have said today?

A—No, sir.

Q—You did not tell him: Look, last Tuesday, Your Honor, August 30, 1966, that this woman alleges that I was, I could not be there or do that to her because on that date and time I was at John Doe's house, you may send for them.

A—Simply, I did not tell him.

Q—Tell me, was there a preliminary hearing in relation to these events?

A—Yes, sir.

Q—Did you testify what you allege happened?

A—I did not testify it, excuse me, may I ask you a question?"

After the prosecuting attorney concluded his cross-examination at p. 348 of the transcript of evidence and, obviously, for the purpose of clarifying that defendant had not testified at the preliminary hearing, it is that the defense asks the latter in the redirect examination whether he had testified at said hearing. With that question the defense clarified that defendant had not testified at the preliminary hearing. That is the reason why it later requested special instructions from the judge to the effect that a defendant is not bound to present his defense of alibi during the investigation, nor at the preliminary hearing. Instructions which were denied by the judge.

What inconsistency is there between stating that you know nothing of the matter under investigation and establishing at the trial the defense of alibi? Instead of inconsistency, there is compatibility. His defense is to the effect that he was not at the place where it is alleged that the events took place. To claim that he should have stated from the beginning where he was, is to indirectly deny him the protection granted to him by the constitutional provision. There is no difference whatsoever in the fact that appellant stated, during the stage of the investigation and before the preliminary hearing was held, that he did not know anything and the fact that he remained silent during said hearing. To claim that the constitutional provision does not shelter a citizen who states, without legal advice, that he knows nothing of the matter under investigation, but that it spreads its protective mantle over a defendant who, advised by counsel, informs that he does not testify because his testimony may incriminate him, is to go back in the development of the law to the time when justice was done only to those who knew the intricate rules of the game. For a long time that concept of justice has lost its effectiveness in our medium.

■ The prosecuting attorney was not justified in stressing in his cross-examination the fact that defendant did not raise the defense of alibi during the investigation, nor during the preliminary hearing. There was no reason for the prosecuting attorney to make reference to his silence during the preliminary hearing, because of the fact that he chose to testify in his own defense the day of the trial.

Invoking *People* v. *Archeval*, 74 P.R.R. 478, 482 (1953), where we stated that "once the defendant takes the witness stand, he becomes a witness just like any other and is subject as any other witness to the same rules and procedures regulating the examination and cross-examination," the Solicitor General maintains that the prosecuting attorney could inquire from the defendant the reason why he had not presented the defense of alibi during the investigation of the case and when the preliminary hearing was held.

Before considering the applicability of the constitutional provision, it is pertinent to state that Rule 74 of the Rules of Criminal Procedure of 1963 provides that the defendant is not bound to notify the prosecuting attorney that his defense is an alibi until ten days before the trial is held.[1] Defendant complied with the rule by notifying the prosecuting attorney on time.

It should also be borne in mind that the rule invoked by the Solicitor General is generally accepted and that it is in

---

[1] The rule provides:

"When the defendant makes a plea of not guilty and intends to establish the defense of insanity at the time of the alleged commission of the offense charged against him, or the defense of alibi, he shall, not less than ten days before the trial, file with the court a notice to that effect, serving a like notice on the attorney of the government. If the defendant fails to serve such notice he shall not be permitted to offer evidence tending to establish said defenses. The court may, however, permit the introduction of said evidence if just cause is shown for the failure to serve the notice. In that event, the court may decree the continuance of the trial on motion of The People, grant leave to reopen the case of The People, or provide for any appropriate remedy."

force in the federal jurisdiction as it is set forth in *Caminetti* v. *United States*, 242 U.S. 470 (1917).

The constitutional provision which guarantees every citizen the right of not being a witness against himself goes back to the Sixteenth Century; Corwin, *The Supreme Court's Construction of the Self-Incrimination Clause*, 29 Mich. L. Rev. (1930). It is a guarantee to protect the innocent. Hence, the Supreme Court of the United States, through Mr. Justice Harlan, stated thus in *Grunewald* v. *United States*, 353 U.S. 391, 421 (1957):

"We need not tarry long to reiterate our view that, as the two courts below held, no implication of guilt could be drawn from Halperin's invocation of his Fifth Amendment privilege before the grand jury. Recent re-examination of the history and meaning of the Fifth Amendment has emphasized anew that one of the basic functions of the privilege is to protect *innocent* men. Griswold, The Fifth Amendment Today, 9–30, 53–82. 'Too many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege.' *Ullmann* v. *United States,* 350 U.S. 422, 426. See also *Slochower* v. *Board of Higher Education,* 350 U.S. 551, when, at the same Term, this Court said at pp. 557–558: 'The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances.' "

In Puerto Rico, the Constitution provides, just as the Fifth Amendment, that "no person shall be compelled in any criminal case to be a witness against himself." But in the federal jurisdiction the provision which implements it is of a statutory nature. See 18 U.S.C.A. § 3481.[2] In our jurisdiction the Constitution itself provides that "the failure of the accused to testify may be neither taken into consideration nor

---

[2] "In trial of all persons charged with the commission of offenses against the United States . . . the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him."

commented upon against him." The position of the Solicitor General is to the effect that said constitutional guarantee yields before the rule set forth in *Archeval.*

Three cases of the Supreme Court of the United States, *Raffel* v. *United States,* 271 U.S. 494 (1926); *Grunewald* v. *United States, supra,* and *Stewart* v. *United States,* 366 U.S. 1 (1961), are pertinent to the question raised.

*Raffel* presents the following situation. A witness against Raffel testifies in a former trial that the latter had admitted certain facts which established his guilt. Raffel did not testify in that trial. In the second trial the witness repeats the same thing. Raffel then chooses to testify in order to deny it. It was permitted to use Raffel's silence in the first trial in order to challenge his testimony in the second.

It seems to be an accepted opinion that this decision has lost virtuality in the light of subsequent opinions which we will consider hereinafter.

In *Grunewald,* a codefendant named Halperin, upon testifying before the grand jury invoked the Fifth Amendment when he was asked several questions which he had refused to answer before the grand jury. The prosecuting attorney was then allowed to face the defendant with the fact that he had invoked the privilege before the grand jury. In his charge to the jury the judge informed that petitioner's plea could be taken only as reflecting on his credibility, but that no inference as to guilt or innocence could be drawn therefrom. The court reversed the judgment because it understood that a prejudicial error was committed on cross-examination in permitting to make reference to the fact that the defendant had invoked the Fifth Amendment before the grand jury.

Mr. Justice Black, with whom the Chief Justice, Mr. Justice Douglas, and Mr. Justice Brennan joined, delivered a concurring opinion. He stated therein:

". . . I agree with the Court that use of this claim of constitutional privilege to reflect upon Halperin's credibility was error,

but I do not, like the Court, rest my conclusion on the special circumstances of this case. I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution. To the extent that approval of such a rule in *Raffel* v. *United States,* 271 U.S. 494, has vitality after *Johnson* v. *United States,* 318 U.S. 189, 196–199, I think the *Raffel* case should be explicitly overruled."

In *Stewart,* the Supreme Court of the United States faces the question again. In this case the opinion, contrary to *Grunewald,* invokes the constitutional provision (Fifth Amendment). See Sobel, *Self-Incrimination "Federalized,"* 31 Brooklyn L. Rev. 1, 43 (1964).

Stewart was charged with murder. His chief defense was insanity. On two occasions where he was convicted and his sentences were set aside, he did not testify in his defense. At the third trial he chose to testify. The questions asked by the defense were obviously made for the purpose of showing his unbalanced mental condition. His answers were not responsive. On cross-examination he answered in the same manner. The prosecutor concluded his cross-examination with the following remarks, in the form of questions: "Willie, you were tried on two other occasions." "This is the first time you have gone on the stand, isn't it, Willie?"

The defense moved for a mistrial. The prosecutor stated that the jury was entitled to know that fact. The trial judge agreed with the prosecutor and the defendant was convicted for the third time. On appeal, the case was heard by the Court of Appeals sitting *en banc.* It was affirmed by a five to four vote. The Supreme Court reversed.

Before the Federal Supreme Court the Government conceded that it was not proper to make reference to defendant's prior failure to testify, but that the error was not prejudicial. The Court contends that it accepts that concession as proper, since ". . . in no case has this Court intimated that there is such a basic inconsistency between silence at one trial and taking the stand at a subsequent trial that the fact of prior silence can be used to impeach any testimony which a defendant elects to give at a later trial." As in *Grunewald*, the judgment was reversed.

In *Miranda* v. *Arizona*, 384 U.S. 436 (1966), the Court stated in footnote 37, at p. 468: "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

In *Fowle* v. *United States*, 410 F.2d 48 (9th Cir. 1969), a case which presents facts very similar to those of the case at bar, an ample study is made of the question considered herein. Fowle was charged with illegal possession of heroin and cocaine. He testified at his trial. He explained that he had been led to act as he did by a government agent and that all the time he thought that he was assisting the federal agents. On cross-examination, the prosecutor asked him if at the time of his arrest he had told the authorities what he had just testified. He answered in the negative and on summation the prosecutor stated that in deciding the plausibility of the defendant they should remember that upon being arrested the most logical thing to do was to tell the federal agents what he had just testified at the trial. Upon considering the point that the purpose of the cross-examination and of the prosecutor's remarks was to impeach the credibility of defendant's testimony, the court stated: "If, on the other hand, Fowle

testifies, as he did, his compelled admission that he remained silent when arrested is no less damaging to him on the ultimate issue of guilt. It is not likely that all jurors would find it psychologically possible to restrict the application of such proof to the narrow purpose for its admission—impeachment—notwithstanding the adequacy of jury instructions given by a careful trial judge. [Citations.]"

The case of *Fagundes* v. *United States*, 340 F.2d 673 (1st Cir. 1965), presents also a state of facts similar to that of the case at bar. A defendant testifies at the trial and his defense is an alibi. The prosecutor asks him why he had not protested his innocence when he was arrested, and on the contrary, he asked to see a lawyer, and why when he was brought before the federal commissioner he had not asserted his alibi. His purpose in asking the questions was to impeach defendant's credibility and to discredit his defense of alibi.

Upon considering the question, the Court of Appeals stated:

"When one takes the stand in his own defense he of course puts his credibility as a witness in issue. Nevertheless we think it reversible error to permit evidence of refusal to talk and of request for counsel on arrest to be used for the purpose of impeachment. In the first place such evidence is ambiguous. Fagunde's words when arrested can as well be taken as indicating reliance upon constitutional rights as supporting an inference that his alibi was an afterthought. There is nothing to indicate which interpretation is more probable. Cf. Grunewald v. United States, 353 U.S. 391, 415–524, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). In the second place we think it reversible error to permit a jury to draw any inference adverse to one accused of crime from his reliance upon his constitutional right to silence and to the advice of counsel. The right to silence on arrest is akin to the right to decline to take the witness stand in one's own defense. Helton v. United States, 221 F.2d 338, 341–342 (C.A.5, 1955).

"The same may be said with respect to Fagunde's failure to assert his alibi when he appeared before a Commissioner. He

was well within his rights in not tipping his hand to the government by disclosing his defense before trial. He is entitled to another trial."

See, also, *Dean* v. *Commonwealth*, 166 S.E.2d 288 (Va. 1969); *United States* v. *Brooks*, 12 U.S.C.M.A. 423 (1961); *Canada* v. *State*, 117 So. 398 (Ala. 1928); *Bunkley* v. *State*, 27 So. 638 (Miss. 1900); *State* v. *Davis*, 226 N.E.2d 736 (Ohio 1967); *People* v. *Russo*, 295 N.Y.S. 457 (1937); *Smithson* v. *State*, 155 S.W. 133 (Tenn. 1913); *Armstrong* v. *State*, 125 S.W.2d 578 (Texas 1939); *Eads* v. *State*, 147 S.W. 592 (Texas 1912); *Hays* v. *State*, 274 S.W. 579 (Texas 1925); *Richardson* v. *State*, 27 S.W. 139 (Texas 1894); Anno. 30 Geo. Wash. L. Rev. 529 (1962). But see *Sharp* v. *United States*, 410 F.2d 969 (5th Cir. 1969); *State* v. *Word*, 456 P.2d 210 (N.M. 1969).

■ From the foregoing we see that the rule invoked by the Solicitor General cannot be used to subvert the rights guaranteed by the Constitution. And that because of the fact that defendant chooses to testify in his own defense at the trial, he does not retroactively waive the constitutional protection on which he has relied during the proceedings prior to the trial.

The reconsideration requested will be denied.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Rigau and Mr. Justice Torres Rigual concur in the result.