THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SAMUEL ROSENZWEIG, Appellant.

(Argued October 10, 1934; decided November 20, 1934.)

*Robert H. Elder, Louis P. Goldberg, Charles Solomon and Otho S. Bowling* for appellant.

*John J. Bennett, Jr., Attorney-General (David Asch and Herman L. Weisman* of counsel), for respondent.

CRANE, J.   The defendant was tried for extortion, as defined by section 850 of the Penal Law.   The indictment alleged that the Independent Wet Wash Laundry Co., Inc., was doing business in Kings county; that Louis Boslow and Max Golinsky were its agents and officers, and that the defendant was the business agent of the Laundry Drivers, Chauffeurs and Helpers Union, No. 810.   The indictment further states that on or about March 19, 1932, the defendant obtained the sum of $5,000 from these officers of the Independent Wet Wash Laundry Co., Inc., by the wrongful use of fear and by threat to do an unlawful injury to the property of said corporation.   The threat is alleged to be that unless Boslow and Golinsky should pay the money the defendant would " unlawfully and maliciously to injure, annoy, harass and obstruct the said corporation in its said business and to prevent it from properly, freely and profitably carrying on the same, and from properly, freely and profitably making and performing contracts in connection therewith."

The defendant was tried before an Extraordinary Trial Term of the Supreme Court in April, 1934, found guilty, and sentenced to Sing Sing Prison for an indeterminate sentence, minimum two years, maximum not more than five years.   The defendant is now serving his sentence, as a certificate of reasonable doubt has not been granted.

As this court has no power to review the weight of evidence, we are confined to questions of law.   Whether there be sufficient evidence to raise a question of fact to be passed upon by the jury is always a question of law, but we pass it in this case, as we may assume that the testimony for the People, if true, sustained the allegations of the charge.

The rulings of the trial judge, upon objections to the admission of testimony, present a question requiring

serious attention. The Appellate Division probably recognized the error, as it was of the opinion that, under section 542 of the Code of Criminal Procedure, it might be disregarded. That section reads: "After hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." The error, in our opinion, was more than technical, and must have affected the jury in determining the issues in this case as it introduced before them the holding of another court upon the very issue in kind which they were to determine. To present our point of view it is necessary to refer briefly to the evidence and to the object which trial counsel had in mind.

Beginning with March 3, 1930, and thereafter up to March 4, 1932, the Laundry Drivers, Chauffeurs and Helpers Union, Local No. 810, had unionized five laundries in Brooklyn, namely, the Independent Wet Wash Laundry Co., Inc., the Primrose, the Great Wet Wash, the R. & S., and the Rugby Laundries. The Independent Laundry was the largest of these five and employed about sixty-five laundry drivers. The union had made a contract with each of these five laundries respecting the compensation of drivers. The contract of March 3, 1930, contained this provision: " Each driver shall be paid $23 a week and in addition thereto 15% of all income from wet wash brought in and delivered by such driver for the first 100 bundles, and 30% of all income from wet wash brought in and delivered by such driver in excess of such 100 bundles, and 15% of all income from flat work brought in and delivered by such driver, and 18% of all income from unit and hand finished work. No driver, solicitor or utility man now receiving above said scale shall suffer any reduction by reason of this agreement."

These contracts, which were all alike, were for two years and, as 1932 approached, the defendant was told by Boslow and Golinsky, in behalf of the Independent Wet

Wash Laundry Co., Inc., that the company could not pay twenty-three dollars; that business had so fallen off that such terms were impossible of performance. Rosenzweig said that it would cost money to take this provision out of the renewal contract. He demanded $25,000, and said that, if the twenty-three-dollar provision was not complied with, a strike would be called. To be exact, we shall quote the testimony as given by Boslow.

" Q. What conversation did you and Rosenzweig have about the 1930 contract? A. I told him I could not pay the $23 a week.

" Q. And what did he say to you? A. I cannot help it.

" Q. What else did you say to him? A. I asked him what I am going to do; he said, ' If you pay the money I take off the $23.'

" Q. Did he say if you pay the money? A. If you pay the money I take off the $23 and you pay the drivers on commission basis."

(Golinsky): " * * * Q. Go on and tell us what else was said? A. We were talking about the $25,000, and he said he is going to take off the $23 a week, and if we could not give him the $25,000 we got to pay to the drivers the $23 a week, and if not, we are going to have a strike.

" Q. Then what did you say to him, or what did your partner say to him in your presence? A. Well, what we got to do in a thing like that is not to have a strike in my business, but make it up with him that we can not get a strike.

" Q. What did you make up with him? A. To pay him.

" Q. Did you agree to pay him certain money? A. Yes."

Thereafter, $5,000 was deposited in escrow for a period of nine months to await the result of Rosenzweig's efforts to modify the contract. Notes were given for the balance. When the 1932 contract was made, this $23 provision, above quoted, was eliminated, and the drivers placed upon a commission basis favorable to the employers.

The evidence shows that the defendant later obtained his $5,000 escrow deposit. The People also proved similar demands or threats made by the defendant to the other laundries above named, and that, in compliance therewith, he had received money for the same purpose.

The 1932 contract expired in March of 1934, and the renewal for the next two years contained more onerous provisions than those in the 1930 contract, because the so-called $23 a week paragraph, above quoted, was included and changed to a $30 a week minimum for drivers.

It was the claim of the defendant that Boslow and Golinsky were made angry by this change and increase and were therefore prejudiced and biased against the defendant Rosenzweig, who was responsible therefor. As the defendant insisted upon the trial that he never received any of this money or made any of the threats, the defendant's counsel went so far as to suggest that the witnesses for the prosecution were testifying falsely so as to ruin or remove or punish Rosenzweig, and that the whole theory of the People's case was fictitious. With this in view the defendant's counsel offered in evidence the contract of 1934 with all these laundries, some thirty-one in number by this time, which actually had nothing whatever to do with the present charge against the defendant. The purpose was to show a supposed motive or reason for these witnesses to testify falsely against the defendant — they had been hurt by the 1934 contract. The People had a perfect right to meet this insinuation or suggestion by showing that Boslow and Golinsky had no animus against the defendant from such a cause, for the reason that the cause did not exist. To do this the People introduced in evidence or brought out on examination of the defendant himself that the contract of 1934 had been declared by the Supreme Court unenforceable. If the contracts with all these laundries for 1934 were unenforceable, as unreasonable, unfair or improperly obtained, naturally the insinuation or suggestion that

Boslow and Golinsky had hatred in their hearts against the defendant because of its harsh provisions, would be very much weakened.

Following up this order of proof, the People offered in evidence the judgment roll in the case of *Burickson* v. *Kleen Laundry Service, Inc.*, the case tried before Mr. Justice FABER of the Supreme Court, holding one of the 1934 contracts illegal, wherein he had made the following decision:

" *Eighth.* That the said instrument was extorted from the defendants by plaintiff and others acting in behalf of plaintiff, by duress and coercion in so threatening the ruin of the defendant's business, in consequence of which and in fear and apprehension thereof, the defendant, Kleen Laundry Service, Inc., signed and executed the instrument.

" *Ninth.* That the Union agreement is harsh, unfair, unconscionable and impossible of performance, and so detrimental to the corporate defendant that to perform it would mean great loss to the defendant corporation and ruination of its business."

Burickson, the plaintiff in this suit, was president of the defendant's union. This was all a collateral matter bearing upon the bias of Golinsky and Boslow. The contract with the Kleen Laundry Service, Inc., was not one of those included in the People's charge. It had nothing to do with this case other than we have said. These findings were read to the jury.

The Kleen Laundry Service, Inc., contract, however, was similar to the contract with the Independent Wet Wash Laundry Co., Inc., and presumably was negotiated through the defendant and the same union officers. Anyhow, the jury had before it the fact that in similar contracts made with the defendant's union, and presumably by him, as he was the manager, the courts had found that the union or its officers used duress, coercion, extortion and threats. Little likelihood is there that, under these circumstances, with this evidence before them,

the jury would assume to find a contrary conclusion when dealing with the 1932 contract in question under the indictment, similar in nature, where the same issue was raised. The fact that the judgment of the court was in a civil action, while their judgment was called for in a criminal action, would make no difference to a jury, whatever the difference might be to the lawyer. Criminal acts must be proved beyond a reasonable doubt; the same charge in a civil action need only be proved by a fair preponderance of evidence. But can we expect our jurymen, even if they understand it, to bear this difference in mind, when a judge has found threats and coercion, and they are asked later to pass their judgment upon a charge that money had been extorted by threats and coercion by the same parties, to procure like or similar contracts?

We think the People, in view of the evidence introduced by the defendant regarding the 1934 contract, were justified in showing that, in a Supreme Court action, those contracts had been rendered null and void or set aside; but we think that it was going entirely too far to show that the judge had made findings in a decision showing threats and coercion by the defendant's union in procuring those contracts. The evil of it is quite apparent when we realize that the circumstances in procuring the Kleen contract for 1934 might have been entirely different from those under which the other thirty contracts or the 1932 contract were obtained, and the evil is aggravated when we are informed that the Kleen judgment and findings offered in evidence were later reversed by the Appellate Division in *Burickson* v. *Kleen Laundry Service, Inc.* (242 App. Div. 701).

Other errors have been called to our attention which we shall not now discuss or pass upon. We recognize that this offense charged against the defendant was serious not only to him but very serious to the community in which he lived and did business. The People

are entitled to as much protection as the defendant, and under conditions existing in Brooklyn relating to these wet wash laundries, calling for Extraordinary Term of the Supreme Court to be appointed and a special grand jury to deal with the matter, we should be very slow in reversing a verdict of guilty. Prosecution and conviction are the one means, if not the only means, the law has to suppress and wipe out the nefarious practices evidenced by this record, and yet the defendant, whoever he may be, when faced with such a criminal charge, is entitled to have the rules of evidence and the conduct of the trial proceed against him in the same manner as a defendant charged with any other crime. He certainly must not be convicted by evidence which the law does not recognize and which, as to the charge against him, has no relevancy to his case. He should not be convicted because it appears that subsequently he may have committed acts of impropriety calling for judgment and condemnation in the civil courts but in no way touching or bearing upon the criminal charge for which he is being tried. We agree with the Appellate Division that the admission of this evidence was error, but we think it of so substantial a nature that the conviction based upon it must be set aside.

The judgments should be reversed, and a new trial ordered.

LEHMAN, CROUCH and LOUGHRAN, JJ., concur; POUND, Ch. J., O'BRIEN and HUBBS, JJ., dissent.

Judgments reversed, etc.