THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOE RUSSO, Otherwise Known as JOSEPH BARLETTO, Appellant.

First Department, May 7, 1937.

*Caesar B. F. Barra* of counsel [*Ralph J. Barra* with him on the brief], for the appellant.

*Aiken A. Pope, Deputy Assistant District Attorney,* of counsel [*William Copeland Dodge, District Attorney*], for the respondent.

DORE, J. Defendant, in the Court of General Sessions of the County of New York, was convicted of the crime of robbery in the first degree and sentenced to State prison for not less than ten nor more than twenty years. The indictment charged defendant with robbery, assault, grand larceny, and receiving stolen goods, but the case was submitted to the jury only on the count charging robbery in the first degree.

The issue of fact in the case was the identification of defendant as one of two men — the other unapprehended and unknown — who on the morning of August 12, 1936, held up the bookkeeper of Carbone Brothers & Co., dealers in fruits and vegetables, in the office of that company on the first floor of the premises at 189 West street, the southeast corner of Duane and West streets, in the city and county of New York, and robbed him of $278. Defendant, who had no criminal record, took the stand in his own behalf and denied that he had in any way participated in the robbery or that he was on Duane street at West street at any time that morning. He claimed that on the morning in question, while walking on Franklin street toward Washington street to solicit business for his father for whom he worked in the business of carting and removing rubbish and ashes, a man came running around the corner and ordered him out of the way, that he became frightened, thinking the man had a gun, and started to run towards Greenwich street, where he met the policeman.

The evidence of identification being direct and positive and not incredible as a matter of law, there was a question of fact for the jury to determine. The issue was submitted to the jury by the learned trial court in a clear and comprehensive charge as to which there were no exceptions and no requests by either side. The jury resolved the issue against defendant, and as the verdict is not against the evidence or the weight of the evidence, we should affirm the judgment of conviction were it not for one error in the admission of evidence which defendant claims is so material and prejudicial as to require reversal.

While defendant was on the stand, after cross and redirect examination had been completed, and practically as the very last matter on which evidence was taken before the case went to the jury, the trial court, after asking defendant to repeat his story of running on the street because he was afraid of a man with a gun, then itself interrogated him at length as to his failure to take the stand and make that or any explanation of the charge against him in the Magistrates' Court. The following occurred: " By the Court: * * * Q. Did you appear in the Magistrates' Court before you came to this court? A. Yes, sir. Q. Appear before a judge? A. Yes. Q. Listened to this charge made against you? A. Yes. Q. At that time did you make any explanation of what you were doing on the street? [Objection of defendant's counsel overruled.] Q. At that time did you make any explanation of why you were running on the street, or what you did that day? A. When I went up to the Magistrates' Court? Q. Yes. Did you go on the stand and tell your story? A. I don't remember. Q. Did you go on the stand and tell your story? Defendant's counsel: I object to that upon the ground that the defendant may remain mute, and the law does not require any explanation whatsoever at any time. The Court: Objection overruled. Defendant's counsel: I respectfully except. Q. What I want to know is, for the first time you testified in this case — is this the first time you testified in this case? Is it? A. This time? Q. Yes. A. I was never on the stand before, your Honor. Q. Were you represented by counsel in the Magistrates' Court? Did you have a lawyer there? A. Yes, sir.''

The district attorney obviously referring to that incident in his summation pointed out to the jury that the defendant had plenty of opportunity, if he so desired, on previous occasions to tell the same story he told on the witness stand in the present trial but that he did not do any such thing.

The Code of Criminal Procedure, section 393, provides that a defendant in all cases may testify as a witness in his own behalf but that his neglect or refusal to testify does not create any pre-

sumption against him. The People urge that defendant, having taken the stand in his own behalf, waived the benefit of section 393 of the Code of Criminal Procedure, and was properly subject to be cross-examined as to any fact of his past life which bore upon his credibility. It is true that defendant, having taken the stand in his own behalf, did waive the protection of that section, and accordingly could be asked to give evidence relevant to the issue although such evidence was injurious to him: that is the consequence of the election which he makes to become a witness. (*People* v. *Tice*, 131 N. Y. 651; *People* v. *Trybus*, 219 id. 18, 24.) Nevertheless, defendant's failure to take the stand on the prior hearing before the magistrate was in no way an admission of guilt; he had the right to stand mute before the Magistrates' Court, and no presumption could be created against him from his neglect or refusal to take the stand and tell his story. It was, therefore, clearly error to interrogate defendant on his failure to take the stand at the prior trial or hearing. (*People* v. *Michor*, 226 App. Div. 569.) That error was emphasized and aggravated by the fact that the erroneous testimony was adduced by the trial court itself.

Under section 542 of the Code of Criminal Procedure an appellate court must give judgment without regard to technical errors or defects or to exceptions " which do not affect the substantial rights of the parties." What we have now to decide is whether the error in question was so prejudicial to the substantial rights of the parties as to require reversal. This, as the Court of Appeals has frequently observed, is " many times a very troublesome question." (*People* v. *Wilcox*, 245 N. Y. 404.) Pointing out that " error is * * * a relative term," the court in that case stated: " Its seriousness depends upon the nature of the evidence and the strength or weakness of the case. An error in a judge's ruling which would be serious in one case might be ignored as immaterial in another."

In *People* v. *Purtell* (243 N. Y. 273) the court said: " One of the most difficult problems which confronts appellate courts in reviewing criminal cases tried before a jury is to determine when a wrong ruling regarding the admission or rejection of evidence requires a reversal of the judgment of conviction. Every error is not fatal. Section 542 of our Code of Criminal Procedure provides that after hearing an appeal the court must give judgment without regard to technical errors or defects or exceptions which do not affect the substantial rights of the parties. Whether an error has such an effect necessarily depends upon the nature of the case and the narrowness of the issue. Good judgment rather than definite rules of law must in such cases be our guide." In that case, also, the issue was identification. A witness who refused to identify the

defendant was cross-examined as to his previous statements and thereafter a detective was produced to contradict his denials of such statements and the detective testified that the witness previously had identified the defendant. The court held that the issue being sharply drawn as to defendant's participation in the crime, and the evidence of identification being somewhat contradictory, the admission of the testimony was an error affecting defendant's substantial rights.

In *People* v. *Rosenzweig* (265 N. Y. 323) the court said: " The error, in our opinion, was more than technical, and must have affected the jury in determining the issues in this case as it introduced before them the holding of another court."

If, on reading the evidence as reasonable men and drawing reasonable conclusions therefrom, we find that there is competent evidence to support the verdict, evidence so clear and conclusive that an appellate court can say affirmatively that the accused was not and could not have been substantially injured or prejudiced by the erroneous ruling, the conviction clearly should be affirmed. After a careful examination of the entire record in this case, we are constrained to the conclusion that the error in question did substantially affect defendant's rights. It was defendant's constitutional privilege not to take the stand at the hearing before the magistrate. The sole issues on the trial were identification and the credibility of defendant's story. Upon such issues there was sharp conflict in the testimony. The examination by the court as to defendant's failure to take the stand before the magistrate was impressive and may well have been a deciding factor in the jury's final rejection of defendant's story. By inference the jury was told that, if defendant had not given the magistrate the same explanation he gave on trial, his story was a fabrication. We, therefore, consider that the admission of this incompetent evidence, adduced at the very end of the case by the trial court itself, did seriously influence the jury and, therefore, prejudicially affected defendant's substantial rights.

Accordingly, the judgment of conviction should be reversed and a new trial ordered.

GLENNON and UNTERMYER, JJ., concur; MARTIN, P. J., and COHN, J., dissent and vote to affirm the judgment of conviction under section 542 of the Code of Criminal Procedure, on the ground that the guilt of the defendant was conclusively established by the evidence and the error committed by the trial court in the circumstances of this case was not prejudicial.

Judgment reversed and a new trial ordered.