**Lottie Mae MESSIER, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13967.**

Court of Criminal Appeals of Oklahoma.

May 17, 1967.

Carl A. Rizley and John E. T. Ivester, Sayre, for plaintiff in error.

**340**

G. T. Blankenship, Atty. Gen., Jeff Hartmann, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge:

Lottie Mae Messier, who shall hereafter be referred to as defendant, was charged by information with the crime of Receiving Stolen Property. She was tried before a jury, found guilty, and the punishment left to the trial judge, who sentenced her to the Oklahoma State Penitentiary for a term of Two Years.

Though defendant asserts three contentions of error, we will discuss only one—which this Court deems sufficient for Reversal.

The contention of error involves the cross-examinations of defendant by the prosecuting attorney. The question propounded was regarding a previous trial of one of the co-defendants. It appears from the record that three persons were charged with participating in the same crime of Receiving Stolen Property, to-wit: a white face heifer cow. Those charged were: defendant, Merle Green, and Clyde Green. During the course of the preliminary hearing in the Green case, the county attorney called this defendant as a witness, and she refused to testify against the Green's. She claimed her privilege under the Fifth Amendment, that to answer the question might tend to incriminate her. Then defendant was later tried for "Receiving" the same stolen property, and while testifying in her own behalf, she was cross-examined by the county attorney in the following manner:

"Q. You just said something about yourself and about Clyde Green and Merle Green being charged with Larceny, and a case being dismissed?

A. All I knew you threw it out.

Q. You remember that you took the witness stand in that case, that I called you as a witness and you answered a few questions?

MR. RIZLEY: Your Honor, that is incompetent, irrelevant, and immaterial.

THE COURT: Overruled.

MR. RIZLEY: Exception.

A. No, sir; that wasn't the same one.

Q. You don't remember taking the witness stand and answering a few questions?

A. No, we never did come; we were supposed to go before Judge Peterson and you threw it out, and then when you come back at us, you waited until after—

Q. I am talking about the County Court on preliminary hearing, I called you as a witness to testify in that case against Merle Green and Clyde Green, didn't I?

A. Not in that case.

Q. Didn't you take that witness stand and answer a few questions?

A. In this case it never come up, the one I am speaking of.

Q. And—

MR. RIZLEY: The record in that case is the best evidence.

THE COURT: Overruled.

MR. RIZLEY: Exception.

Q. Then when it came to testifying against Mr. Green, your attorney had written out on a little slip of paper, you looked down and read and you said, 'I take the Fifth Amendment and I refuse to answer on the ground that it might incriminate me', do you remember that?

A. I don't claim to be an attorney, I don't know law.

Q. You remember taking the Fifth Amendment?

A. That wasn't the same case.

Q. Do you remember refusing to testify against Clyde Green?

A. That wasn't the same case.

Q. That is not what I am asking you.

A. You dropped it.

THE COURT: Mrs. Messier, we are going to have to proceed in order. You listen carefully to the question asked and you answer that question and not some other question. Let's do proceed in order. You answer the question that is asked.

Q. I am asking you if I called you as a witness on the preliminary hearing against yourself, Clyde Green and Merle Green and in the County Court of this county, in this courtroom, and put you on the witness stand as a witness to testify, and asked you if—I asked you a few formal questions which you answered and then I asked you some question concerning Clyde Green and your attorney Mr. Rizley had given you a little piece of paper and written out something on it, you looked down at it and you said, 'I take the Fifth Amendment and I refuse to testify on the ground that it might incriminate me.' Didn't that happen?

MR. RIZLEY: We object to that as incompetent, irrelevant and immaterial.

THE COURT: Overruled.

MR. RIZLEY: Exception.

A. Judge, I can't answer that either way, because Clyde, Merle, and myself was served equally. Then he threw that out. He came back separately, equally, when we were served we were all three served eaually, the same paper, you threw that out. Then you came back separately. Now, that is what you are talking about, that is when I refused to testify, we were separately, they were two people and I was one.

Q. You refused to testify against Clyde Green in this court, in this courtroom on the ground that it might incriminate you and invoked the benefit of the Fifth Amendment on the advice of your counsel, Mr. Rizley?

A. That is right, I did, yes. That was a different time.

Q. That is all.

MR. RIZLEY: That is all."

Defendant contends that in permitting the prosecutor to go into this matter constituted error.

This Court has never had an opportunity to pass upon this question, but the Supreme Court of the United States has spoken in this regard numerous times.

In the case of Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed. 2d 931, 62 A.L.R.2d 1344, where Halperin, one of the defendants, took the stand to testify in his own behalf; on cross-examination the prosecuting attorney asked him the same question that he had refused to answer before a grand jury. This time, Halperin answered the question: His answers tended to show his innocence of any wrong doing. The Government was permitted, over objection, to draw from him the fact that he had previously refused to answer these questions on the grounds that his answers might tend to incriminate him. The Court held that under the circumstances, it was prejudicial error for the trial judge to permit cross-examination of petitioner relative to taking the Fifth Amendment privilege before the grand jury, and that Halperin must be granted a new trial. In a special concurring opinion, Justice Black, joined by Justice Douglas and Justice Brennan, had this to say:

"I agree with the Court that use of this claim of constitutional privilege to reflect upon Halperin's credibility was error, but I do not, like the Court, rest my conclusion on the special circumstances of this case. I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them."

"It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution."

Also, in the case of Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, at page 706, the Supreme Court had this to say:

"When the accused in a criminal case is permitted to exercise his constitutional right against self-incrimination, the question of its exercise is a matter solely between him and the trial judge, in which the jury has no concern whatever; no inference may be drawn from the claim of privilege and consequently the jury may not be permitted to consider it in determining the credibility of him who invoked it. Cf. Boyle v. Smithman, 146 Pa. 255, 23 A. 397; Harrison v. Powers, 76 Ga. 218; State v. Vroman, 45 S.D. 465, 188 N.W. 746; Phelin v. Kenderdine, 20 Pa. 354; State v. Weber, 272 Mo. 475, 199 S.W. 147."

In discussing the matter, the Court further said:

"But where the claim of privilege is asserted and unqualifiedly granted, the requirements of fair trial may preclude any comment. That certainly is true where the claim of privilege could not properly be denied. The rule which obtains when the accused fails to take the stand (Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650) is then applicable. As stated by the Supreme Court of Pennsylvania, 'If the privilege claimed by the witness be allowed, the matter is at an end. The claim of privilege and its allowance is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right. The allowance of the privilege would be a mockery of

justice, if either party is to be affected injuriously by it'."

The State relies upon Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L. Ed. 1054. However, this case has been impliedly overruled by Johnson v. United States, supra; and Grunewald v. United States, supra.

■ Regardless of any conflict that might exist in the Federal cases, it is the concensus of this Court that we should follow the "No Comment" rule and that it is impermissible to permit cross-examination of a defendant relative to previously taking the privilege as afforded in the Fifth Amendment.

■■ Re-examination of the history of the Fifth Amendment has emphasized anew that one of the basic functions of the privilege is to protect innocent men; and, too many, even those who should be better advised, view this privilege as a shelter for wrong-do'ers. They too readily assume that those who invoke it are either guilty of crime, or commit perjury in claiming the privilege.

In spite of their erroneous belief, the privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances. See, Griswold, The "Fifth Amendment Today." Also see, Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511–518, 53 A.L.R. 2d 1008.

■ In view of the recognized and erroneous conception of the privilege, it is far better that the "No Comment" rule be applied in such cases. It is obvious that the probative value of such evidence is far outweighed by the impermissible and prejudicial impact it would tend to have on the jury.

For the reasons heretofore stated, and the citations of authority herein, the case is hereby reversed and remanded for a new trial.

BRETT and BUSSEY, JJ., concur.