327 A.2d 106
**In the Matter of Edward L. SILVERBERG et al.**

Supreme Court of Pennsylvania.
Argued Jan. 22, 1974.
Decided Oct. 16, 1974.

Thomas B. Rutter, Philadelphia, for appellants.

Special Judicial Investigation; William P. Stewart, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

By order of October 28, 1971, the President Judge of the Court of Common Pleas of Philadelphia authorized a special judicial investigation into unethical conduct by members of the Philadelphia bar. In the course of this investigation appellants were called before an investigating judge who was to determine whether the evidence against them warranted institution of formal charges. The investigating judge concluded that formal charges were indicated.

Appellants were then tried before a three-judge special disciplinary court. The three-judge court found that appellants had engaged in unethical conduct, specifically, by soliciting negligence cases and submitting inflated medical cost reports. Accordingly, Silverberg, Levitan, and Oxman were ordered suspended from the practice of law for one, three, and five years respectively. The hearing court stayed the orders of suspension pending this appeal.[1]

At the formal disciplinary hearing, Oxman and Levitan testified in their own defense; they denied any wrongdoing. On cross-examination special counsel for the investigation was permitted to elicit that appel-

1. This Court's jurisdiction attaches by the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(6), 17 P.S. § 211.202(6) (Supp.1973). The Philadelphia investigation began prior to the adoption of this Court's Rule 17. Therefore Rule 17–24(a)(1), which suspended § 202(6), is inapplicable to the instant proceedings.

lants had claimed the privilege against self-incrimination in the preliminary proceeding before the single investigating judge.[2] These references to appellants' exercise of their constitutional rights were allegedly designed only to impeach their credibility. We conclude that utilization, over objection,[3] of appellant's assertion of the

2.  Silverberg did not claim the privilege at the preliminary proceeding nor take the stand at the disciplinary hearing.

3.  The dissent misapprehends the scope of this Court's articulated policy "that one can not raise on appeal to this Court errors that were not properly preserved below." Although we adhere scrupulously to the waiver doctrine in cases reaching us through the normal avenues of criminal or civil appellate litigation, see *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Commonwealth v. Agie*, 449 Pa. 187, 189, 296 A.2d 741 (1972), not every case comes here in this standard posture. The instant case is an example.

    As the dissenting opinion recognizes, this Court's review of attorney discipline is de novo. See Act of May 19, 1879, P.L. 66, § 1, 17 P.S. § 1663 (1962). Certainly, the most readily discernible attribute of de novo review is that an appealing party is not limited to objections raised in the tribunal of original jurisdiction. The Act of 1879, in fact, authorizes the submission of new evidence in de novo review of attorney discipline cases ("and the complainant shall have the right to offer new testimony by deposition or otherwise as said supreme court may direct").

    If we may take new testimony, then we may entertain objections to that testimony. And if we may rule on these objections, then certainly when reviewing de novo evidence adduced at the original hearing we may take account of objections in the same manner as the trial court could have if the objection had been raised there.

    That the parties may choose to limit their argument to the record before the appellate court does not limit the statutorily-mandated scope of our review. More fundamentally, when our review is de novo, the policies served by our waiver rule are not persuasive. See *Dilliplaine*, supra, *Agie*, supra.

    Furthermore, contrary to the dissent's assertion of waiver is the following exchange omitted from the dissenting opinion's review of the record. This exchange occurred when special counsel first attempted to discredit a witness by referring to his prior assertion of the privilege against self-incrimination.

    While questioning J. P. McGraw, a defense witness, Special Counsel inquired:

    "Q  Do you recall being asked questions about this case before Judge Shoyer and you pleaded the fifth amendment on advice of counsel?

    MR. RUTTER: [Appellant's counsel] I object to that. That is an improper question.

    JUDGE BARBIERI: Why?

MR. RUTTER: The fact that a man has taken the fifth is not a proper subject of cross-examination. It is not impeaching.

MR. STEWART: May I be heard on that? There is a United States Supreme Court case right on point.

JUDGE BARBIERI: I don't think that is a good objection. This is a man who refused to testify before and now he is on to testify and I think counsel has a right to inquire into that. Overruled."

The dissent concedes that the court erred in allowing this reference to the witness' prior claim of the constitutional privilege. Nevertheless it is asserted that appellants have waived their right to raise the fifth amendment claim because this objection was not renewed each time another defense witness or appellant was asked the same question. But our waiver rules do not require futile repetition of an objection which has already been rejected by the court. When special counsel asked Oxman the same question which the court had ruled proper when asked of witness McGraw appellant's counsel was not required to again object only to be again overruled. None of the cases cited by the dissenting opinion require such slavish formalism. See *Dilliplaine v. Lehigh Valley Trust Co.*, supra; *Commonwealth v. Agie*, supra; *Commonwealth v. Henderson*, 441 Pa. 255, 272 A.2d 182 (1971); *Commonwealth v. Payton*, 431 Pa. 105, 244 A.2d 644 (1968).

In a related context, this Court recently has stated that an issue is not waived if counsel, after his initial objection is overruled, does not renew his objection at the end of the challenged testimony. *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917, cert. denied, 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973). In an opinion by Mr. Justice Eagen, we specifically held:

"[T]he repetition of an·objection is needless where the same or similar evidence, already duly objected to, is again offered and the trial court's ruling has indicated that an objection to such evidence will again be overruled."

Id. at 20, 303 A.2d at 920.

The authorities are in accord that this is the better reasoned rule. 1 J. Wigmore, Evidence § 18, at 331 (3d ed. 1940); McCormick's Handbook of the Law of Evidence § 52, at 118 (2d ed. E. Cleary 1972).

It is certainly the prevailing view. See, e. g., *Sanchez v. United States*, 293 F.2d 260, 264–265 (8th Cir. 1961); *United States v. Kelinson*, 205 F.2d 600, 601–602 (2d Cir. 1953) (Frank, J.) (a lawyer is not required "to become a chattering magpie." id. at 602); *Tucker v. Reil*, 51 Ariz. 357, 367–368, 77 P.2d 203, 207–208 (1938); *People v. Terry*, 57 Cal.2d 538, 568, 21 Cal.Rptr. 185, 203, 370 P. 2d 985, 1003 (1962); *McCullers v. State*, 143 So.2d 909, 913 (Fla. App.1962); *Swanger v. Commonwealth*, 255 S.W.2d 38, 39 (Ky. 1953); *Louisville & N. R. R. v. Rowland's Adm'r*, 215 Ky. 663, 666, 286 S.W. 929, 930 (1926); *Holmes v. Terminal R. R. Ass'n*, 363 Mo. 1178, 1188, 257 S.W.2d 922, 926 (1953) ("[W]here a party has seasonably objected to evidence of a certain character by one witness and his objection is overruled, he is not required or expected to repeat his objection when testimony of the same character by another witness is offered."); *West-Nesbitt, Inc. v. Randall*, 126 Vt. 481, 484, 236 A.2d 676, 678–679 (1967); *State v. Tay-*

privilege against self-incrimination violated their rights under the Fifth Amendment to the United States Constitution [4] and article I, section 9 of the Pennsylvania Constitution P.S.[5] The orders suspending appellants must be reversed [6] and a new disciplinary hearing held.[7]

---

*lor,* 130 W.Va. 74, 85, 42 S.E.2d 549, 557 (1947). Compare *State v. Hodge,* 280 Ala. 422, 194 So.2d 827 (1967), with *Wilson v. State,* 37 Ala.App. 644, 73 So.2d 925, 927 (1954). But see *State Highway Dep't v. Hollis,* 106 Ga.App. 669, 127 S.E.2d 862 (1962); *Shelton v. Southern Ry.,* 193 N.C. 670, 139 S.E. 232 (1927).

4. The fifth amendment right against self-incrimination applies in state disciplinary proceedings. *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); cf. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

5. Our article I, section 9 analysis is independent of the provisions of the United States Constitution.

6. In addition to the self-incrimination argument, appellants raise four grounds for reversal. First, they allege evidence gathered by subpoena should not have been considered because the Philadelphia Court of Common Pleas unlawfully delegated the subpoena power to its investigative staff. Second, it is asserted that the court did not have the power to authorize the procedure used in the special investigation. Third, we are urged that the procedure denied appellants their right to confrontation of witnesses and due process. Finally, appellants argue that the evidence is insufficient to warrant the imposition of discipline. Our disposition makes consideration of these arguments unnecessary.

7. The Act of May 19, 1879, P.L. 66, § 1, 17 P.S. § 1663 (1962), vests in this Court the duty to review attorney discipline cases de novo. See n. 3 supra; *Krehel Appeal,* 419 Pa. 86, 213 A.2d 375 (1965); *Schlesinger Appeal,* 404 Pa. 584, 172 A.2d 835 (1961); *Moyerman's Case,* 312 Pa. 555, 167 A. 579 (1933). However, where, as here, we find constitutional error in the admission of crucial evidence, we deem it consistent with justice and equity, see 17 P.S. § 1663, to remand rather than to attempt to decide these questions on the cold and diminished record.

In this case, the factfinder's assessment of the demeanor and credibility of witnesses for each side is the pivotal determination. The credibility of the primary defense witnesses, the attorneys themselves, was impeached and possibly severely impaired by unconstitutional references to their prior claims of the privilege against self-incrimination. We therefore conclude that remand to the special disciplinary court is the only method by which appellants may obtain a decision from a factfinder who has knowledge of all the relevant evidence—testimonial and demeanor, and is untainted by the unconstitutionally-elicited impeachment.

We do not, as the dissent would lead one to believe, hold that exercise of our duty to review attorney discipline cases de novo

In *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), the United States Supreme Court faced the question before us today. Defendant Halperin was accused of corruptly influencing witnesses before a federal grand jury. When called before another grand jury, he declined to answer certain questions because his answers might incriminate him. At trial he answered the same questions in a way consistent with innocence. The government was permitted, over objection, to cross-examine Halperin on his allegedly inconsistent responses. The trial judge however indicated that this cross-examination could be considered only as reflecting on the witness' credibility.[8]

The Supreme Court reversed. Justice Harlan, writing for the majority, noted that the practice of impeaching a witness' credibility by bringing out a prior claim of the privilege against self-incrimination "has grave constitutional overtones." 353 U.S. at 423, 77 S.Ct. at 983–984. Reversal, however, was based on the Court's supervisory power. Id. at 424, 77 S.Ct. at 984. Two grounds for reversal were advanced. First, the Court, for the sake of argument, assumed that Halperin's trial testimony and earlier claim of privilege were inconsistent. It then held that the potential for prejudice inherent in this cross-examination so far outweighed its probative value that the trial court in its sound discretion should not have permitted the questions. Id. at 420–421, 77 S.Ct. at 982.

is discretionary. We have reviewed the record de novo—that is, we have not been bound by the findings of fact of the hearing court. See *Krehel Appeal*, 419 Pa. 86, 213 A.2d 375 (1965) (Jones, J.). However, our review has convinced us that the cold record is inadequate. We cannot intelligently judge the credibility and demeanor of witnesses by reference to the pages of a printed record. Therefore, consistent with our concomitant duty imposed by the Act of 1879, supra, to act as "the justice and equity of the case shall require," we remand to the special disciplinary court.

8. See *Grunewald v. United States*, 353 U.S. 391, 416–417, 77 S.Ct. 963, 980, 1 L.Ed.2d 931 (1957).

Second, examining the defendant's testimony further, the Court concluded that the cross-examination was also improper because only prior inconsistent statements may be used to impeach. See 3A J. Wigmore, Evidence § 1040 (Chadbourn rev. 1970). Both the claim of privilege before the grand jury and the exculpatory answers at trial were "wholly consistent with innocence." 353 U.S. at 421, 77 S.Ct. at 982. Therefore no inconsistency existed and impeachment should not have been permitted.

The concurring opinion of Justice Black, joined by then Chief Justice Warren, and Mr. Justice Douglas and Mr. Justice Brennan, addressed the constitutional issue directly.

> "I agree with the Court that use of this claim of constitutional privilege to reflect upon Halperin's credibility was error, but I do not, like the Court, rest my conclusion on the special circumstances of this case. I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution."

Id. at 425–426, 77 S.Ct. at 984–985.

Since *Grunewald* was decided, several courts have concluded that the reasoning of the concurring opinion, which, of course, was in no way contradicted by the majority's failure to reach the constitutional issue, precludes cross-examination by reference to a prior claim of the privilege against self-incrimination. *Fowle v. United States*, 410 F.2d 48, 51–56 (9th Cir. 1969); *Fagundes v. United States*, 340 F.2d 673, 677–678 (1st Cir. 1965); *Dean v. Commonwealth*, 209 Va. 666, 166 S.E.2d 228

(1969); *State v. Greer*, 17 Ariz.App. 162, 496 P.2d 152 (1972); *People v. Jordan*, 7 Mich.App. 28, 151 N.W.2d 242 (1967); *State v. Martin*, 84 N.M. 27, 498 P.2d 1370 (Ct.App.1972); *Messier v. State*, 428 P.2d 338 (Okl.Ct. Crim.App.1967).[9]

*Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which held the fifth amendment to prohibit comment on a defendant's silence, adopted the reasoning of the *Grunewald* concurring opinion.

> "For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice' . . . which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly."

*Griffin v. California*, supra at 614, 85 S.Ct. at 1232–1233 (citations omitted). See *Fowle v. United States*, supra, 410 F.2d at 53; *Dean v. Commonwealth*, supra, 209 Va. at 670, 166 S.E.2d at 231; *State v. Greer*, supra, 17 Ariz.App. at 165, 496 P.2d at 155; cf. *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). See also *Fagundes v. United States*, supra; *Messier v. State*, supra. We agree that an accused's constitutional right against self-incrimination is violated when a prior claim of the privilege against self-incrimination is introduced to impeach his credibility.[10]

**9.** Other jurisdictions refused to permit use of a prior claim of the privilege to impeach even prior to *Grunewald.* See *State v. Youngquist*, 176 Minn. 562, 223 N.W. 917 (1929); *State v. Conway*, 348 Mo. 580, 154 S.W.2d 128 (1941); *People v. Russo*, 251 App.Div. 176, 295 N.Y.S. 457 (1937); *Parrott v. State*, 125 Tenn. 1, 139 S.W. 1056 (1911). Several states have statutes prohibiting such use of the claim of privilege. E. g., Mass.Gen.Laws Ann. c. 278, § 23 (1959); M.C.L.A. § 600.2159; Mich.Stat.Ann.1962 Rev. § 27A.2159. Compare Act of May 23, 1887, P.L. 158, § 10, 19 P.S. § 631 (1964).

**10.** *United States v. Sobell*, 314 F.2d 314 (2d Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963), relied upon by appellees, does not compel a contrary conclusion. In that pre-*Griffin* case the Second Circuit denied Sobell's fifth federal collateral

■■  It is elementary that a prior statement may be used to impeach a witness' credibility only if that statement is in fact inconsistent with the witness' testimony at trial.  See 3A J. Wigmore, Evidence § 1040 (Chadbourn rev. 1970).  It follows that when the three-judge court permitted the cross-examination in question it must necessarily have inferred that the prior claim of privilege was inconsistent with the later testimony of innocence.

The record does not establish that the three judges who sat as triers of fact in appellants' case directly attributed any indicia of guilt to the claims of privilege.  But in finding the claims inconsistent with innocence and considering them to impeach appellants' credibility the Court made a constitutionally impermissible inference.  As this Court stated more than a century ago:

"If the privilege claimed by the witness be allowed the matter is at an end.  The claim of privilege and its allowance is properly no part of the evidence submitted to the jury, and no inferences whatever can be legitimately drawn by them from the legal assertion by the witness of his constitutional right.  The allowance of the privilege would be a mockery of justice, if either party is to be affected injuriously by it."

*Phelin v. Kenderdine*, 20 Pa. 354, 363 (1853).  See *Johnson v. United States*, 318 U.S. 189, 196–197, 63 S.Ct. 549, 553, 87 L.Ed. 704 (1943).

Appellants testified that they pleaded the privilege upon advice of counsel.  Certainly a reasonable attorney could have many reasons other than concealing guilt for advising a client to claim the privilege at the investigato-

attack on his espionage conviction.  The court considered *Grunewald* only in determining whether Sobell had alleged the "significant denial of a constitutional right."  314 F.2d at 323.  Following, as it was bound to, the reasoning of the *Grunewald* majority, the court of appeals held that the questioned cross-examination did not raise a constitutional issue.  Post-conviction relief was thus denied.

ry stage of disciplinary proceedings. The preliminary proceedings were ex parte; appellants had no opportunity to cross-examine and thus had no means to explain possible exculpatory facts. See *Grunewald v. United States,* supra, 353 U.S. at 422, 77 S.Ct. at 983. "The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." *Slochower v. Board of Higher Education,* 350 U.S. 551, 557–558, 76 S.Ct. 637, 641, 100 L.Ed. 692 (1956). See E. Griswold, The Fifth Amendment Today 9–30, 53–82 (1957).[11]

◼ Just as an attorney may not be disciplined for invoking the privilege in a professional inquiry, *Spevack v. Klein,* 385 U.S. 511, 514–515, 87 S.Ct. 625, 627–628, 17 L.Ed.2d 574 (1967); *Schlesinger Appeal,* 404 Pa. 584, 614–616, 172 A.2d 835, 849–850 (1961), such invocation may not later be used to impeach his credibility when he asserts innocence. The "impeaching" cross-examination that was permitted here is "a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." *Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1232–1233, 14 L.Ed.2d 106 (1965); see *Grunewald v. United States,* 353 U.S. 391, 425–426, 77 S.Ct. 963, 984–985, 1 L.Ed.2d 931 (1957) (concurring opinion).

Here the loss of credibility suffered by appellants for claiming their rights was potentially devastating. Appellants' defense rested heavily upon their testimony professing innocence. The impermissible impeachment of their credibility effectively neutralized the most important defense witnesses.

◼ On this record we cannot say with assurance that the untainted evidence alone, however persuasive, was sufficient to convince the trier of fact of appellants'

11. See also *Ullmann v. United States,* 350 U.S. 442, 76 S.Ct. 497, 100 L.Ed. 511 (1956).

guilt. The testimony of various witnesses was directly contrary to that of appellants. Credibility was crucial in the factfinder's determination. The court explicitly stated that it chose to disbelieve appellants' testimony.

Even though we may assume that the court attached no inference of guilt to the prior plea of privilege, we must conclude that use of the prior plea even to impeach was prejudicial to the defense. Therefore appellants are entitled to a new disciplinary hearing at which no use of their prior claim of the privilege against self-incrimination should be permitted.

▇▇▇ Appellant Silverberg's failure either to claim the privilege in the preliminary proceeding or to take the stand at the disciplinary hearing does not remove him from the ambit of our holding. This was a joint disciplinary hearing. Silverberg as much as either Oxman or Levitan rested his defense on their credibility. See *United States v. Tomaiolo*, 249 F.2d 683, 690–692 (2d Cir. 1957); *State v. Boscia*, 93 N.J.Super. 586, 600-602, 226 A.2d 643, 650–651 (App.Div.1967).

The evidence revealed that for two of the four years in question Silverberg was absent from the law office. The three-judge court found that Silverberg engaged in unethical conduct primarily on the theory that in a three-man office one lawyer could not be unaware of his partners' activities. Silverberg, the court reasoned, though not directly involved in the firm's personal injury cases, must have known of the conduct of his partners and "shared the ill-gotten gains."

At the new disciplinary hearing, with Oxman's and Levitan's credibility unimpeached by their claim of privilege, they may be found not to have engaged in unethical conduct. Thus to now discipline Silverberg for his knowledge of conduct for which the principals may not be disciplined would be both illogical and unjust. We conclude that Silverberg should also have a new discipli-

nary hearing because the unconstitutional cross-examination of witnesses appearing in his defense deprived him of a disciplinary hearing conducted in accordance with due process. Cf. In re Disbarment Proceedings, 321 Pa. 81, 184 A. 59 (1936); *State v. Boscia,* supra.

The order of the special disciplinary court is reversed and the case remanded for further proceedings consistent with this opinion.

NIX, J., filed a concurring opinion in which ROBERTS, J., joins.

JONES, C. J., filed a dissenting opinion, in which POMEROY, J., joins.

POMEROY, J., filed a dissenting opinion, in which JONES, C. J., joins.

JONES, Chief Justice (dissenting).

I dissent. The majority contends that the order suspending appellants must be reversed because the utilization over objection, of appellants' prior assertions of the privilege against self-incrimination violated their rights under the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Without adverting to the merits of this position, my reading of the record clearly indicates that the initial cross-examination of both appellant Oxman and appellant Levitan in regard to their prior exercises of the Fifth Amendment privilege were *not objected to* and that when inquiries were later made into the reasons for the prior exercises, appellants' objections were sustained.[1]

1. The pertinent portions of the transcript appear as follows:
Cross-examination of appellant Oxman:
"Q. Mr. Oxman, you appeared before Judge Shoyer on August 10th, 1972?
A. That's correct.
Q. And at that time you were represented by counsel?
A. Yes, Mr. Rutter.

Q. You pleaded the fifth amendment to our questions dealing with all of the cases that are the subject of this petition as well as a number of other cases?

A. That's correct.

Q. By that I mean, you claimed your privilege under the fifth amendment of the United States Constitution against self-incrimination; is that right?

A. That's correct.

Q. Yet today, with respect to the cases—

JUDGE BARBIERI: He said he pleaded the fifth amendment before Judge Shoyer. I heard that part. What was the next question?

MR. RUTTER: So the record may be clear, the exact language of the claim as asserted at that hearing was as follows: 'I respectfully decline to answer on the ground of any privilege accorded me under the order of this Court dated October 28th, 1971, including, without limiting the foregoing, my rights under the fifth and fourteenth amendment of the United States Constitution and under Section 9 of Article 1 of the Pennsylvania Constitution, and, in particular, on the ground that such answer might tend to incriminate me.'

*    *    *    *    *    *    *    *    *    *

BY MR. STEWART:

Q. You claim presently with respect to the cases which are the subject of our petition which are on trial here that you know of no impropriety by you or your partners in the handling of these cases, is that so?

A. That's correct.

Q. Did you know of any impropriety back in August, on August 10th, 1972, when you testified before Judge Shoyer?

A. I did not.

Q. Then can you explain the reason for your claim of privilege against self-incrimination? Was it a frivolous plea if you had no reason to be concerned about improprieties?

A. Mr. Stewart, when I was asked to appear—

MR. RUTTER: Mr. Oxman, please answer the question directly.

THE WITNESS: It was not a frivolous plea. I did so on the advice of counsel.

BY MR. STEWART:

Q. On the advice of counsel?

A. Yes, after a great deal of deliberation and consideration.

Q. You, yourself, with counsel know you don't enter a frivolous plea if there is no basis for it?

MR. RUTTER: I object.

THE WITNESS: I also know that he who represents himself is a fool for a client.

MR. RUTTER: I rise to protect my own reputation.

JUDGE BARBIERI: All right.

Q. Let me ask one more question on this. Was it your understanding then when you pleaded your privilege against self-incrimination that that privilege applied only to possibly immunization for criminal conduct which is really what we are talking about in the fifth amendment? Was that your understanding of the law on self-incrimination?

MR. RUTTER: I would object to the question because Mr. Stewart has stated the right to claim the privilege of the fifth amendment incorrectly.

MR. STEWART: No I haven't, Mr. Rutter.

JUDGE BARBIERI: Just a minute, Mr. Stewart. State your objection.

MR. RUTTER: The objection is that Mr. Stewart has stated the right to claim the protection of the fifth amendment incorrectly.

JUDGE KLEIN: My understanding of the law is that you cannot ask a citizen why he took the fifth amendment. If he took it, that's it.

JUDGE BARBIERI: I'm not sure. Judge Klein, that at a criminal matter you cannot ask him—if you were questioning his professional integrity that may not be the rule. I don't know. But I don't see what difference it makes.

MR. RUTTER: My only point is I refer to the Schlesinger Appeal.

JUDGE BARBIERI: Is that a disciplinary case?

MR. RUTTER: Yes, it is. The Schlesinger Appeal is a disciplinary case, a decision in 1961, in which the Court said that a witness may have a reasonable fear of prosecution yet be innocent of any wrongdoing and yet be entitled to assert the privilege.

JUDGE KLEIN: It would seem to me that in any kind of a case, if you engage a lawyer and the lawyer advises you to do it, that that is this situation then.

MR. RUTTER: Well, I take the responsibility for the plea, Your Honor. No doubt that.

MR. STEWART: The only point I want to make, Your Honor, is that—

JUDGE KLEIN: You have made your point before Judge Shoyer, Mr. Oxman, and you took the.fifth amendment. And now here he is testifying.

JUDGE BARBIERI: All right. *I will sustain the objection.* I don't think he has to give his reasons." (Emphasis added)
Record, vol. 6, at 139–142.

Cross examination of appellant Levitan:

"Q. Why, then, did you plead the fifth amendment before Judge Shoyer when questioned about these very cases and the testimony that you gave on the stand here today?

A. At that time, sir, I and my partners had retained Mr. Rutter to represent us. We discussed this at length and it is Mr. Rutter's advice to us that that was the course that we should follow.

Q. Were you aware of the paragraph in Judge Jamieson's order of October 28, 1971 requiring every member of the bar to cooperate with the investigation?

A. Yes, sir.

Q. Do you think it was cooperation to plead the fifth amendment in view of your knowledge that there was no impropriety when the Court is calling upon you to explain your practice and conduct before its bar?

MR. RUTTER: Objected to.

JUDGE BARBIERI: I think that objection has to be sustained. Do you agree?

Two other witnesses who had previously been called before the Special Disciplinary Court were also cross-examined with regard to prior assertions of the privilege against self-incrimination. When the first of these witnesses, J. P. McGraw, was so questioned, counsel for appellants objected on the grounds that this was not a proper question since it was not impeaching.[2] Appellants did not and had no standing to object to this questioning on a constitutional basis since the privilege against self-incrimination inured to the witness and not appellants.[3] Thus, even if we are to treat appellants' objection to the questioning of McGraw as representing a continuing objection to this line of questioning of subsequent witnesses, appellants can still not be said to have objected on the basis that the reference to the prior assertion of the privilege against self-incrimination raises an impermissible inference of guilt, thereby violating their rights under the United States and Pennsylvania Constitutions. Nevertheless, this is the sole basis of the reversal by the majority.

---

JUDGE KLEIN: Yes.
JUDGE MONTEMURO: Yes.
JUDGE BARBIERI: *Objection is sustained.* I don't think you can ask why he pleaded that unless I don't understand." (Emphasis added)
Record, vol. 7, at 129–130.

**2.** I agree with appellants that McGraw's testimony at the proceeding before the Special Disciplinary Court and the earlier claim of privilege were not inconsistent and therefore not impeaching. *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). However, even if we assume, arguendo, that the court below completely discredited the testimony of McGraw on the basis of this evidence, that would not require reversal of the suspension orders since McGraw's testimony was only pertinent, *even tangentially,* to four of the sixty-nine charges against appellants. There is *substantial evidence* on the record to support the sanctions imposed based solely on the remaining charges.

**3.** When the second witness, William Jordan, was called, there was no objection to the initial inquiry into the fact that he had previously claimed his privilege against self-incrimination and, when further inquiry was made into the witness' reasons for invoking the privilege, objection thereto was sustained.

I am thoroughly convinced that the majority mistakenly found reversible error to have occurred during the proceedings below. However, this determination is not really pertinent to the appropriate disposition of the case by the Court. The Act of May 19, 1879, P.L. 66, § 1, 17 P.S. § 1663 (now suspended by Supreme Court Rule 17–24(a)(4)), provides in pertinent part that "it shall be the *duty* of said supreme court to review the [proceedings] *de novo*. . . ." (Emphasis added) The legislative mandate and the consistent holdings of this Court are that such review is *mandatory*. *Krehel Appeal*, 419 Pa. 86, 213 A.2d 375 (1965); *Schlesinger Appeal*, 404 Pa. 584, 172 A.2d 835 (1961); *Moyerman's Case*, 312 Pa. 555, 167 A. 579 (1933).

The nature of our de novo review pursuant to the Act of May 19, 1879, requires in *every case* that we review a cold record. This record may be modified on appeal to this Court where errors of law have been committed by the court below. If the court below committed error in receiving certain evidence, then that evidence can be expunged from the record by this Court. If the court below erred in excluding evidence, then this evidence and any other new testimony may be offered by the complainant as specifically provided for by the Act of May 19, 1879.[4]

The instant case was presented to this Court solely on the testimony introduced during the disciplinary proceedings below. Since our review is de novo we are not bound by the findings of fact and conclusions of the court below, but are free to make our own determination as to the weight and credibility of the evidence. *Krehel Appeal*, 419 Pa. 86, 213 A.2d 375 (1965). It is also to be noted that generally conclusions of the hearing court in disciplinary proceedings are very persuasive on this

4. The Act of May 19, 1879, does not provide for the submission of additional testimony by the disciplinary counsel. Accordingly, when the majority refers to objections to new testimony, they necessarily refer to objections by disciplinary counsel.

Court, since the court of first instance better knows the lawyer, his standing, character, credibility, and fidelity to trust. *Kraus's Case*, 322 Pa. 362, 185 A. 737 (1936). To the extent the opinion of the court below as to the credibility of Oxman and Levitan was tainted by the reference to their prior assertion of the privilege against self-incrimination, this resulted from their failure to object.[5] However, granting that such references were improper because they were not impeaching, and granting that appellants can raise on *de novo* appeal to this Court alleged errors not raised below, the appropriate and equitable remedy to be applied here is the expunction of these references from the record before *this Court*, not at a new disciplinary hearing.[6]

That this Court is not able to judge the demeanor of the witnesses who appeared before the disciplinary court is *inherent* in the review provided for by the Act of May 19, 1879. To the extent that this review is not totally satisfactory, we can be comforted in knowing that this

---

5. See prior discussion of this point.

6. Despite the majority's traversal, the following language from the majority opinion makes it abundantly clear that the majority has applied principles of traditional *appellate* review rather than of *de novo* review where this Court is the ultimate finder of fact:

   "On this record we cannot say with assurance that the untainted evidence alone, however, persuasive, was sufficient to convince the trier of fact of appellants' guilt. The testimony of various witnesses was directly contrary to that of appellants. Credibility was crucial in the factfinder's determination. The court explicitly stated that it chose to disbelieve appellants' testimony.

   Even though we may assume that the court attached no inference of guilt to the prior plea of privilege, we must conclude that use of the prior plea even to impeach was prejudicial to the defense. Therefore appellants are entitled to a new disciplinary hearing at which no use of their prior claim of the privilege against self-incrimination should be permitted."

   The majority properly recognizes that our traditional waiver rule is not apposite when our review is *de novo*. However, since the majority has not treated this appeal as a *de novo* review, the policies enunciated in *Commonwealth v. Agie*, 449 Pa. 187, 189, 296 A.2d 741 (1972) and *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974) should be applied.

Act has now been suspended. Nevertheless, there is no authority by which this Court can evade its statutorily-mandated *de novo* review in the present case. In reviewing this case in adherence to the legislative mandate and the dictates of our prior case, law, it is clear beyond any question that the suspension orders should be affirmed.

POMEROY, J., joins in this dissent.

POMEROY, Justice (dissenting).

I join the opinion of the Chief Justice, and add this separate opinion primarily to emphasize that our powers of de novo review under the Act of May 19, 1879, P.L. 66, § 1, 17 P.S. § 1663, permit us to disregard any error committed by the court below in admitting testimony that appellants. Oxman and Levitan had invoked their constitutional privilege against self-incrimination at a prior stage of the disciplinary proceeding. Even if nothing in this statute prevents us from remanding a case to the trial court in appropriate circumstances, this course is not justified in the present case. There is abundant evidence in the record that appellants have engaged in unethical conduct. Moreover, nothing in the careful review of this evidence in the opinion of the court en banc below suggests that the court gave any weight whatever to this controverted testimony in making its findings; indeed, the claim of privilege is not so much as mentioned. Moreover, I find it hard to understand how remanding this case for retrial can guarantee a more impartial review of the evidence, for copies of the majority opinion will of course be read by the judges who will constitute the new disciplinary court, and presumably by common pleas judges throughout the Commonwealth. Thus we will have the anomaly that when this case is retried, no "factfinder . . . untainted by the unconstitutionally-elicited impeachment" * will be available.

* Majority opinion, *supra*, n. 7.

In my view, a second trial of this case will be a costly and time-consuming exercise in futility.

JONES, C. J., joins in this dissenting opinion.

NIX, Justice (concurring).

While I join the Majority opinion, I feel compelled to comment on the belief expressed in Mr. Chief Justice Jones' Dissenting opinion that the resolution of the instant appeal is premised on a misapplication of the controlling statute governing the nature of review by this Court.

Apparently, there is some misunderstanding as to the effect of the legislative directive that this Court review de novo an allegation of professional misconduct.

The pertinent portion of the controlling statute reads as follows:

"and *it shall be the duty of said supreme court to review the same de novo*; and the complainant shall have the right to offer new testimony by deposition or otherwise as said supreme court may direct, and upon hearing said court may modify, reverse or affirm said judgment, order or decree of the court below, as the justice and equity of the case shall require, . . ." (Emphasis added)

Act of May 19, 1879, P.L. 66, § 1, 17 P.S. § 1663. In construing the instant provision in *Krehel Appeal,* 419 Pa. 86, 213 A.2d 375 (1965) we said:

"Since the review is de novo, we are not bound by the findings and conclusions of the court below, but are free to make our own determination as to the weight and credibility of the evidence, and the inferences to be drawn therefrom, bearing in mind the well-established principle that a preponderance of evidence is necessary to establish an attorney's unprofessional conduct and the proof of such conduct must be clear and satisfactory; . . ."

Id. at 89, 213 A.2d at 377.

However, in my judgment, it was not the import of the above quoted language to limit the methods available to us to determine those facts upon which a decision must depend. Unquestionably, we are free to make contrary findings of fact, draw independent inferences and reach opposing conclusions from those of the reviewing tribunal below. This however, does not preclude us from having the benefit of the appraisal of credibility made by the tribunal before which the witnesses actually appeared. Here, as a result of the taint occasioned by the improper consideration by the panel of the invocation of the 5th Amendment privilege, we were denied the opportunity. The purpose for the instant remand is to obtain a proper evaluation of the credibility of the witnesses from the tribunal below before we reach our ultimate decision.[1]

ROBERTS, J., joins in this concurring opinion.

1. Mr. Chief Justice Jones in his dissent observed:
"The nature of our de novo review pursuant to the Act of May 19, 1879, requires in *every case* that we review a cold record. This record may be modified on appeal to this Court where errors of law have been committed by the court below. If the court below committed error in receiving certain evidence, then that evidence can be expunged from the record by this Court."
I have no quarrel with the accuracy of this statement but I cannot agree that it is in any way inconsistent with the action taken by the majority of the Court today. While we are not mandated to seek the hearing court's appraisal of the credibility of the witnesses appearing in the litigation, there is nothing in the Act that prevents us from obtaining an untainted judgment on this issue, if we deem it desirable before reaching our final conclusion. Because of the importance of the issue of credibility in this lawsuit we are of the opinion that justice demands this added precaution.
The dissent is also misleading insofar as it suggests that the mandate of the majority's opinion requires a second complete evidentiary hearing. The order only requires that the court below reassess its judgment as to the credibility of the witnesses, excluding any consideration for the fact that they may have invoked the protection of the 5th Amendment in another proceeding.