437 A.2d 1169

**In re Harry J. OXMAN and Ralph S. Levitan, Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1981.

Decided Dec. 17, 1981.

536

John W. Herron, Philadelphia, and Allen B. Zerfoss, Harrisburg, for appellee.

Thomas B. Rutter, Philadelphia, for appellants.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION

KAUFFMAN, Justice.

Harry J. Oxman and Ralph S. Levitan appeal from orders of the Special Disciplinary Court of the Court of Common Pleas of Philadelphia suspending them from the practice of law for one and one-half years and one year respectively for 29 violations of the Canons of Ethics and the Code of Professional Responsibility.[1] Because we conclude that the findings of fact are adequately supported by the record, and because those facts forcefully establish that appellants are unworthy of the public trust and confidence vested in them

1. On October 28, 1971, the Honorable D. Donald Jamieson, then President Judge of the Court of Common Pleas of Philadelphia, authorized a Special Judicial Investigation into allegations of unethical conduct by members of the Philadelphia bar, and appointed three judges from the Court of Common Pleas to constitute a Special Disciplinary Court ("Court").

The Court found appellants to have counseled and requested six clients and former clients to testify falsely when they appeared before the investigating judge in the Special Judicial Investigation, thereby impeding the investigation in violation of Disciplinary Rules 1–102(A)(4), (5), and (6) of the Code of Professional Responsibility. The Court further found that appellants used false information in eleven retainer agreements filed in the Court of Common Pleas of Philadelphia, again in violation of Disciplinary Rules 1–102(A)(4), (5), and (6). Finally, the Court found appellants to have solicited twelve personal injury claims through an "investigator," in violation of Canons 27 and 28 of the Canons of Ethics in effect prior to 1970, which prohibit solicitation through touters and the employment of agents or runners to engage an attorney for personal injury claims, and of Disciplinary Rules 1–102(A)(2) and 2–103(A), which prohibit conduct circumventing a disciplinary rule through actions of another and recommending employment as a private practitioner to a person who has not sought such advice.

as members of the legal profession, we affirm the orders imposing discipline.[2]

The record discloses a pattern of serious misconduct by appellants, culminating in a reprehensible effort to impede the disciplinary investigation by requesting witnesses to give false testimony. William R. Jordan ("Jordan"), an "investigator" employed by appellants' law firm ("firm"), frequently appeared at accidents, hospitals, and the homes of accident victims for the purpose of persuading potential claimants to retain the firm. Contingent fee agreements were then filed by appellants in the Court of Common Pleas of Philadelphia which falsified referral sources in an effort to conceal their unethical solicitations. Appellants thereafter compounded their earlier transgressions by counseling and requesting clients and former clients to testify falsely before the investigating judge in the Special Judicial Investigation. The sufficiency of the evidence establishing these facts is not challenged.

On September 6, 1972, then Special Counsel William Stewart filed a Petition for Imposition of Discipline. A trial on the merits was held, and, on July 16, 1973, the Court suspended Oxman from the practice of law for five years and Levitan for three years.[3] Because of the conduct of Special Counsel during the trial, however, that decision was reversed by an Order of this Court on October 16, 1974, and the case was remanded for a new hearing.[4]

2. Jurisdiction is vested in this Court pursuant to the Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended,* 42 Pa.C.S.A. § 722(8).

3. The Court also suspended a third member of the firm, Edward L. Silverberg, for one year. Silverberg is not a party to this appeal.

4. This Court found trial error in permitting Special Counsel's cross-examination of appellants and another defense witness concerning their invocation of the Fifth Amendment privilege against self-incrimination at preliminary proceedings. *Matter of Silverberg,* 459 Pa. 107, 327 A.2d 106 (1974). In its original Adjudication of July 16, 1973, the Court had relied, in part, upon this prior invocation of the Fifth Amendment privilege to resolve credibility issues against appellants.

Upon remand, the Court did not conduct a new hearing, but reconsidered the prior record, and on December 27, 1974, issued a supplemental Order and Opinion reimposing the same discipline. Because the reconvened Court did not afford appellants a new hearing on the merits, however, this Court reversed on October 3, 1975, and remanded again for a new trial.[5]

No further action was taken until March 14, 1978, when the Honorable Edward J. Bradley, President Judge of the Court of Common Pleas of Philadelphia, requested that counsel to the Disciplinary Board of the Supreme Court of Pennsylvania pursue the matter. This was agreed to on May 3, 1978, and on July 13, 1978, Judge Bradley appointed Allen B. Zerfoss, the Disciplinary Board's Chief Counsel, and his assistant John W. Herron, as Special Counsel to prosecute these disciplinary charges against appellants. On February 16, 1979, Judge Bradley also appointed a new Special Disciplinary Court ("Disciplinary Court").

On February 23, 1979, new Special Counsel refiled a Petition for Imposition of Discipline, and on April 16, 1979, appellants filed preliminary objections which raised (1) lack of jurisdiction of the Disciplinary Court, (2) delay in rescheduling trial, and (3) fairness and impartiality of the Disciplinary Court. The preliminary objections were dismissed on June 8, 1979, and an appeal from that dismissal was filed in this Court.

On June 27, 1979, appellants petitioned the Disciplinary Court to amend its June 8, 1979 order to certify that a controlling question of law existed. On the same day, appellants petitioned this Court for permission to appeal an interlocutory order. The Disciplinary Court denied appellants' petition on June 29, 1979. Appellants thereafter filed with this Court a petition seeking review of that denial. On August 16, 1979, this Court denied both of appellants' then pending petitions.

5. *Matter of Oxman*, 463 Pa. 225, 344 A.2d 804 (1975).

On August 27, 1979, appellants filed a motion entitled "Plea in Bar or, In the Alternative, Motion to Dismiss the Petition for Imposition of Discipline," alleging that a retrial of the disciplinary charges would violate their Fifth Amendment double jeopardy rights. On September 4, 1979, the Disciplinary Court denied this motion and also denied appellants' requests for a stay of the proceedings and for the Disciplinary Court to recuse itself. On the same day, appellants filed a Notice of Appeal and requested this Court to stay the trial until their double jeopardy claim had been resolved. We orally denied appellants' request for a stay, and the trial proceeded. The Disciplinary Court issued its Adjudication and Imposition of Discipline on August 6, 1980. An appeal was taken to this Court, and on September 2, 1980, the Disciplinary Court stayed imposition of discipline. On December 2, 1980, all pending appeals were consolidated by this Court.

# I

Appellants first contend that the Petition for Imposition of Discipline should have been dismissed because the delay between this Court's remand on October 3, 1975 and the retrial violated their constitutional rights to a speedy trial.[6] We disagree.

█ It is now well-established that not all constitutional protections afforded defendants in criminal cases apply to disciplinary proceedings. *See Office of Disciplinary Counsel v. Campbell*, 463 Pa. 472, 345 A.2d 616 (1975) (principles of *res judicata* and double jeopardy do not bar a disciplinary

---

**6.** The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor and to have the Assistance of Counsel for his defense.

U.S.Const.Amend. VI.

proceeding which follows disposition of criminal charges although based on substantially the same conduct); *Berlant Appeal*, 458 Pa. 439, 328 A.2d 471 (1974), *cert. den.*, 421 U.S. 964, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1976) (standard of proof required for sustaining disbarment is "by a preponderance of the evidence" rather than "beyond a reasonable doubt").[7] In particular, the Sixth Amendment right to a speedy trial has been held to be inapplicable in disciplinary proceedings. As the Supreme Court of Oregon recently explained:

It ought to be made clear . . . that *the primary purpose of professional disciplinary proceedings is to protect the public.* The punishment of an offending member of the profession is indeed a serious matter, but it is incidental to the protection of the public. If the conduct of a member of the Bar disqualifies him from the practice of law, it would not be in the public interest to dismiss the disciplinary proceedings for no reason other than the Bar's failure to prosecute them with proper dispatch. (Emphasis supplied).

*In re Weinstein*, 254 Or. 392, 394, 459 P.2d 548, 549 (1969), *cert. den.*, 398 U.S. 903, 90 S.Ct. 1689, 26 L.Ed.2d 61 (1970). *See also Fitzgerald v. Cawley*, 368 F.Supp. 677 (S.D.N.Y. 1973); *Bar Association of Baltimore City v. Posner*, 275 Md. 250, 339 A.2d 657 (1975), *cert. den.*, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975). While due process may require dismissal of disciplinary charges if inordinate delay has caused substantial *actual* prejudice, *Caldwell v. State Bar of California*, 13 Cal.3d 488, 119 Cal.Rptr. 217, 531 P.2d 785 (1975), appellants, who at all times have retained the unlimited right to practice law, have proved no such thing.[8]

---

**7.** *Cf. In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (attorney against whom discipline is sought must be advised of the nature of the charges); *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (attorney in disciplinary proceeding can assert Fifth Amendment privilege against self-incrimination).

**8.** Although appellants assert that some witnesses suffered impaired memories since the 1973 proceedings, the Disciplinary Court reasonably concluded that most witnesses demonstrated excellent recall and that the evidence of the essential elements of the offenses charged was clear and convincing. Moreover, the transcript of the

■ While we expressly and emphatically disapprove of the delay in these disciplinary proceedings, the record confirms that it was inadvertent and that it has not impeded appellants' right to a fair hearing.[9] We thus conclude that the Disciplinary Court correctly refused to dismiss the Petition for Imposition of Discipline.

## II

■ Appellants next contend that their constitutional rights not to be placed twice in jeopardy for the same offense were violated by retrial after this Court concluded that the conduct of Special Counsel at the first trial required a reversal.[10] We again disagree.[11] Application of the double

first proceeding was at all times available to the witnesses and was in fact used in the rehearing to refresh recollections where necessary.

9. On November 12, 1975, former Special Counsel William Stewart requested to withdraw from the case because of other commitments. Judge Bradley then became involved with reorganization of the Philadelphia court administration staff. We further note that appellants failed to request that a date for rehearing be set after the remand.

10. The Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides in pertinent part:

No person shall be .... subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S.Const.Amend. V.

11. At the first trial in 1973, Special Counsel cross-examined appellants and another defense witness concerning their assertion of the privilege against self-incrimination at a preliminary proceeding. Appellants characterize this cross-examination as intentional prosecutorial misconduct and contend therefore that the double jeopardy clause bars retrial. In 1973, however, no court decision precluded Special Counsel from cross-examining defense witnesses concerning their assertion of the privilege against self-incrimination. It was not until 1974 that we first extended to disciplinary proceedings the ruling of *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which held that a prosecuting attorney may not comment upon a *criminal* defendant's assertion of the Fifth Amendment privilege. *Matter of Silverberg*, 459 Pa. 107, 327 A.2d 106 (1974). There is thus no evidence of intentional prosecutorial misconduct.

jeopardy clause generally extends only to criminal proceedings, *see United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1981); *Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1937), and since disciplinary proceedings are not criminal in nature, courts consistently have rejected double jeopardy defenses asserted therein. *Fitzgerald v. Cawley*, 368 F.Supp. 677 (S.D.N.Y.1973); *Office of Disciplinary Counsel v. Campbell, supra; In re Mackay*, 416 P.2d 823 (Alaska 1966), *cert. den.*, 382 U.S. 803, 86 S.Ct. 28, 15 L.Ed.2d 56 (1966).[12]

## III

 Appellants further contend that the Disciplinary Court erred in refusing to recuse itself after receiving prejudicial information in a pre-trial proceeding.[13] Courts

Moreover, subsequent to our decision in *Silverberg*, the Supreme Court of the United States has held that it was not unconstitutional in a prison disciplinary proceeding for the state to advise a prisoner that if he remained silent, his silence would be used against him, so long as any discipline imposed was not based solely on the refusal to testify. *Baxter v. Palmigano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). The *Baxter* Court expressly noted that the Fifth Amendment does not prohibit adverse inferences against parties in *civil* actions when they refuse to testify.

12. Because the principles of double jeopardy do not apply to disciplinary proceedings, the interlocutory appeal filed without permission on September 4, 1979 did not divest the Disciplinary Court of jurisdiction to proceed to trial, and on September 4, 1979, this Court 'rejected appellants' application to stay proceedings. *See* Pa.R. App.P. 1313.

13. On August 27, 1979, appellants filed a motion entitled "Plea in Bar or, in the Alternative, Motion to Dismiss the Petition for the Imposition of Discipline," contending that Special Counsel had engaged in intentional prosecutorial misconduct at the first trial, and that the Fifth Amendment right not to be placed twice in jeopardy for the same offense therefore barred further prosecution. Appellants requested the Disciplinary Court to consider the motion and then recuse itself since it would have knowledge that they had asserted the privilege against self-incrimination or, in the alternative, to assign the motion to a different panel of judges. On September 4, 1979, during oral argument on appellants' motion, each member of the Disciplinary Court advised counsel that he had not examined or read the contents of the sealed envelope containing appellants' motion and supporting memorandum. The Disciplinary Court denied the motion and appellants' request for a stay, and the matter proceeded to trial after this Court also rejected appellants' request for a stay.

uniformly recognize, however, that a judge is presumed to be impartial, *Commonwealth v. Conrad*, 241 Pa.Super. 324, 361 A.2d 421 (1976), and that information learned by him in his judicial capacity does not necessarily result in personal bias requiring disqualification. *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976), *cert. den.*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *United States v. Gilboy*, 162 F.Supp. 384, 393–94 (M.D.Pa.1958).[14] Since the Disciplinary Court learned of appellants' prior assertion of the Fifth Amendment privilege from appellants themselves, and since it clearly had the capacity to dismiss such a fact from its consideration, that Court was not precluded from rendering a fair determination in this matter.[15]

## IV

■ Our primary task in disciplinary matters is to protect the public from unfit attorneys and to maintain the integri-

**14.** The Pennsylvania cases cited by appellants, *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973), and *Commonwealth v. Jones*, 259 Pa.Super. 103, 393 A.2d 737 (1978), do not compel the conclusion that the Disciplinary Court should have recused itself after receiving the allegedly prejudicial information. In those cases, the courts held that the introduction of evidence of prior convictions was so inflammatory and prejudicial that fair trial was not possible. Here, on the other hand, the allegedly prejudicial information related solely to appellants' prior invocation of the right against self-incrimination and this information was provided to the Disciplinary Court by appellants. *Cf. Baxter v. Palmigano, supra*, n.11.

**15.** Appellants also contend that the Disciplinary Court erred in refusing to conduct a complete evidentiary hearing on their claim of selective prosecution. It is settled, however, that not all selective prosecution is forbidden; only selective prosecution based on some unjustifiable standard such as race, religion, or other arbitrary classification is constitutionally proscribed. *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Shade v. Commonwealth of Pennsylvania, Department of Transportation*, 394 F.Supp. 1237 (M.D. Pa.1975). Appellants here have not even alleged selective prosecution based on race, religion, or other suspect classification, and have failed to demonstrate even a colorable entitlement to the claim of selective prosecution. The Disciplinary Court thus did not err in refusing to conduct a full evidentiary hearing on the issue. *United States v. Ahmad*, 347 F.Supp. 912 (M.D.Pa.1972), *aff'd in part and rev'd in part sub nom., United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973); *Commonwealth v. Dessus*, 262 Pa.Super. 443, 396 A.2d 1254 (1978).

ty of the legal profession and the judicial process. *See Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981); *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981). As we observed in *Office of Disciplinary Counsel v. Lewis, supra, quoting Maryland State Bar Association, Inc. v. Agnew,* 271 Md. 543, 318 A.2d 811:

> Few vocations offer as great a spectrum for good and honorable works as does the legal profession. The attorney ... is a fiduciary, a confidant, an advisor, and an advocate....
>
> *A court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute.* Disciplinary procedures have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public. (Emphasis in original).

493 Pa. at 528, 426 A.2d at 1142.

In soliciting clients, in falsifying contingent fee agreements, and, most seriously, in requesting witnesses to testify falsely in an effort to impede the Special Judicial Investigation, appellants have breached their ethical duties and have violated the public trust. We particularly condemn appellants' reprehensible efforts to obstruct the administration of justice. *See Office of Disciplinary Counsel v. Campbell, supra; Montgomery County Bar Association v. Hecht,* 456 Pa. 13, 317 A.2d 597 (1974). Because the record before us reveals a deplorable disregard for the integrity of the judicial process, we are compelled to conclude that appellants are unworthy of the public trust and confidence vested in them as members of the legal profession.

Accordingly, we affirm the discipline imposed by the Disciplinary Court and order that appellants be suspended from the practice of law immediately. It is further ordered that the periods of suspension shall be computed from the date of filing this Opinion.