## In Re Anonymous No. 16 D.B. 85

Disciplinary Board Docket No. 16 D.B. 85.

TUMOLO, *Member*, April 29, 1987 — Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

[    ] (respondent) is a 40-year-old lawyer admitted to practice in the Commonwealth of Pennsylvania in 1973 with a regular office for conducting business at [    ].

Respondent was charged with violation of four Disciplinary Rules, to-wit:

(a) Disciplinary Rule 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation;

(b) Disciplinary Rule 1-102(A)(6), dealing with conduct that adversely reflects on a lawyer's fitness to practice law;

(c) Disciplinary Rule 9-102(B)(3), which requires a lawyer to maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and to render appropriate accounts to his clients regarding them; and,

(d) Disciplinary Rule 9-102(A), requiring in applicable part, that all funds of clients paid to the lawyer be deposited into one or more identifiable bank accounts wherein no funds belonging to the lawyer shall be deposited.

The hearing committee found that all four Disciplinary Rules were violated by respondent.

The board's recommendation requires a more detailed history of the proceedings than usual. That history shows a seven-year gap between the Office of Disciplinary Counsel's (petitioner) initial inquiry into respondent's conduct, and this report and recommendation to the Supreme Court of Pennsylvania. The history of disciplinary proceedings is as follows:

a. On July 16, 1981, petitioner wrote respondent informing him of the complaints against him.

b. Approximately nine months later, on March 8, 1982, petitioner conducted an informal investigation to determine whether there was factual support for the allegations.

c. Approximately three years after the informal investigation, on March 6, 1985, petitioner filed a petition for discipline consisting of three separate charges against respondent involving violations of the above-cited Disciplinary Rules.

d. On April 3, 1985, the petition for discipline was referred to a hearing committee.

e. Approximately eight months later, on November 21, 1985, the hearing committee conducted proceedings to determine whether there was a violation of any of the above-cited rules. A violation of all four rules was found. However, no hearing on the discipline to be imposed was conducted on November 21, 1985, nor was any scheduled.

f. Accordingly, on December 15, 1986, the board issued an order directing an expedited hearing for purposes of determining the appropriate discipline to be imposed, and compelling that a report be filed with the office of the secretary on or before January 9, 1987.

g. A hearing was conducted for purposes of determining the appropriate discipline on December 23, 1986.

h. On January 7, 1987, the hearing committee filed its report.

i. On January 22, 1987, the Office of Disciplinary Counsel filed a letter brief on exceptions only as to the discipline imposed.

j. On March 25, 1987, the exceptions were heard before a three-member panel of the board.

k. On April 10, 1987 a report was made by the three-member panel to the board.

The history shows a period of approximately seven years between the time when the Office of Diciplinary Counsel first inquired into the charges, and this report to the Supreme Court of Pennsylvania.

In its report and recommendation, the hearing committee recommended to the board that respondent be suspended from the practice of law for a period of six months.

The Office of Disciplinary Counsel filed a brief on exceptions only as to the recommendation for discipline by the hearing committee. No exceptions were filed by either party as to the findings of fact, or conclusions as to the Disciplinary Rules which were found to be violated by the hearing committee.

## SUMMARY OF THE CASE

All of the violations of the Disciplinary Rules result from two personal-injury cases which respondent handled on behalf of [ ] and [ ] [A], and [B]. In both instances, respondent was retained to represent the clients on a contingent fee basis.

The [As] were involved in an automobile accident, and respondent accepted a $6,500 settlement offer.

He then negotiated the settlement check and returned the release to the insurance company knowing that the [As] signatures were forged on both.* Respondent told the [As] that the settlement was for only $5,000 instead of $6,500, and he kept the $1,500 difference from August to December 1980. For whatever credit may be gained from it, re-

---

* It appears to the board that in both the [A] and [B] cases the forgeries of the checks and the releases were accomplished by respondent. But the hearing committee is less clear on the subject. With regard to [A], they conclude at Finding No. 14: "The [As] did not sign the release or the $6,500 settlement check and the signature purporting to be theirs are forgeries."

But with regard to [B], the hearing committee concluded at Finding No. 25: "The signature on the release purporting to be that of [B] does not appear to be her signature."

26. The signature on the settlement check purporting to be that of [B] does not appear to be her signature.

27. At all relevant times, the settlement check and the release were in the possession and control of either respondent or [B].

28. Although one might suspect the respondent caused the forged endorsements on the [B] settlement check and release, the evidence is insufficient to determine who caused these forged endorsements."

Without making a distinction between the two cases, the hearing committee concluded at Conclusion of Law no. 1: "The committee finds that respondent did violate Disciplinary Rule 1-102(A)(4) dealing with conduct involving dishonesty, fraud, deceit and misrepresentation when he forged checks and releases, failed to give his clients the money due them, and, misrepresented the facts to his clients." The board concludes the petitioner met its burden of proving forged checks and releases by the respondent in both the [A] and [B] cases. These facts can be, and were here, proved by circumstantial evidence. See Office of Disciplinary Counsel v. John A. Wittmaack (opinion of the Supreme Court filed March 11, 1987, at page 18). Other than as clarified herein, the board accepts the findings of fact and conclusions as to violations of Disciplinary Rules as made by the hearing committee.

spondent did acknowledge the $6,500 settlement, contending that he had made a mathematical error, and that when he realized this, he made up the monetary difference to the [As]. Accordingly, no monetary loss was incurred by the [As] since they accepted the "corrected" settlement amount.

With regard to [B], the hearing committee found that in the course of representing this client, respondent attended a pretrial conference on September 30, 1980, at which time an insurance company offered a settlement of $4,250. While the Office of Disciplinary Counsel charged that [B] rejected this settlement, the hearing committee found that the client did in fact authorize the settlement of the matter for $4,250, contingent upon respondent aiding his client in obtaining Social Security benefits. The facts show that respondent did pursue [B's] appeal on her denied Social Security disability claim.

However, the settlement proceeds for [B] were received on November 7, 1980, and deposited by respondent in the [C] Bank Escrow Account No. [ ]. The hearing committee found that [B] wrongfully repudiated the settlement she had agreed to. Respondent properly filed a petition to deposit the settlement funds in court. Those funds were not deposited into the [ ] County Common Pleas Court until June 30, 1981. On March 25, 1981, the balance in respondent's escrow account was $1,230.78, and the balance continued to be less than the amount which was owed to [B] through at least April 20, 1981. Respondent attempted to account for being out of trust by stating that he had a $5,000 cash deposit in a safe in his office, but the facts are clear that he had no method of accounting for a cash escrow, and much more troublesome, the hearing committee concluded:

"The committee has concluded that the Respondent's testimony is not creditable, and cannot be believed with respect to this charge. The committee is satisfied that his statement in his answer that $5,000 in cash in his safe covered deficiencies was a false statement. The committee is satisfied that his testimony at hearing and explanation of his being out of trust was false." See report of hearing committee, Page 19.

After the hearing committee found violations of all four Disciplinary Rules, a hearing on the discipline to be imposed was held.

In mitigation, the committee found:

(1) that while the legal defense of laches was not met, the seven-year pendency of these charges was "a source of great anxiety and concern to respondent. Their effect upon him was readily apparent from his testimony and demeanor at the hearing of December 23, 1986;"

(2) that respondent's prior and subsequent disciplinary record has been clean.

(3) that friends and clients were willing to appear and testify to respondent's character and satisfactory handling of their legal matters; and,

(4) that there was no financial loss to either [A] or [B].

## DISCUSSION

The board, pursuant to Pa.R.D.E. 208(d) may either affirm or change in writing the recommendation of the hearing committee. No appeal was taken by either party to the hearing committee's findings of fact or conclusions as to violations of the Disciplinary Rules. Petitioner excepts only to the recommended imposition of discipline by the hearing committee. At the oral argument disciplinary counsel stated that if the charges would have been pros-

ecuted in a timely manner, the Office of Disciplinary Counsel would have recommended a minimum of a three-year suspension, to a maximum of disbarment for respondent.

But, in light of the fact that the prosecutorial stage consumed a lengthy period of time in which respondent has suffered what the hearing committee describes as "acute, prolonged and severe mental anguish," Disciplinary Counsel was recommending a two-year suspension. Respondent, on the other hand, accepts the recommendation of the hearing committee for a six-month suspension.

The violations are obviously of the most serious nature. If those violations had been promptly prosecuted, there is no precedent that would be authority for only a six-month suspension. See Office of Disciplinary Counsel v. Grigsby, 393 Pa. 194, 425 A.2d 730 (1981), and Office of Disciplinary Counsel v. John A. Wittmaack (Opinion of the Supreme Court filed March 11, 1987).

The hearing committee was careful to analyze the significant changes that the passage of seven years had brought about. Specifically, the hearing committee found that there was no prior history of discipline, and that subsequent to the charges at hand, there were no other infractions. In addition, although the passage of time did not constitute laches which would bar a prosecution [See In Re Oxman and Levitan, 496 Pa. 534, 437 A.2d 1169 (1981)], the passage of time had certainly shown a substantial number of subsequent dealings with the public which were unblemished. Both parties agree that while prosecution is not barred, the substantial passage of time should be mitigating circumstance, since a person is likely to make substantial changes in his life over such a lengthy period of time which makes the imposition of a harsh penalty unjustified.

The hearing committee made the conclusion that respondent will not return to his prior pattern of conduct. These are all conclusions which a hearing committee is in the best position to make. In addition, during the seven years of delay, respondent and his wife have adopted two children who are supported by respondent's practice of law.

Nevertheless, the board cannot accept the hearing committee's recommendation for a six-month suspension. The board believes the hearing committee correctly evaluated the mitigating factors involved in the imposition of discipline. However, when the grievous nature of the violations is combined with the fact that the hearing committee found that respondent's testimony with regard to whether he was out of trust with monies held on behalf of [B] was false, there is a showing of present lack of candor.

The board is aware that an administrative injustice has occured in the slow prosecution of this case. In addition, any suspension from the practice of law has an attendant delay with readmission since respondent must file a petition, rather than being automatically readmitted. In consideration of all of the factors set out above, the board believes the recommendation of Disciplinary Counsel is the appropriate discipline to be imposed.

## RECOMMENDATION

The board recommends to the Supreme Court of Pennsylvania that respondent be suspended from the practice of law in the Commonwealth of Pennsylvania for a period of two years. It is further recommended that the court direct that all necessary expenses incurred by this board in the investigation and processing of the petition for discipline be borne by and paid for by respondent.

Board member Curran dissents, and would accept the recommendation of the hearing committee for a six-month suspension.

Mr. McDonald did not participate in the adjudication.

## ORDER

NIX, *C.J.*, And now, this June 30, 1987, upon consideration of the report and recommendation of the Disciplinary Board dated April 29, 1987, it is hereby ordered that [respondent] be and he is suspended from the Bar of this Commonwealth for a period of six months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208 (g), Pa.R.D.E.