## In re Anonymous No. 67 D.B. 82

Disciplinary Board Docket No. 67 D.B. 82

STOELKER, Jr., *Member,* November 30, 1989 — Pursuant to rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

Respondent was admitted to practice law in the Commonwealth of Pennsylvania on June 26, 1975.

He is currently suspended by order of the Supreme Court of Pennsylvania. Respondent's last office address was [   ].

On December 4, 1981, respondent was convicted by a jury in the Court of Common Pleas of [   ] County of tampering with a witness in violation of 18 Pa.C.S. §4907.* On July 9, 1982, Respondent was sentenced by the Honorable [A] as follows: (1) two-year probation; (2) a condition that defendant must stay within a 100-mile radius of [   ], Pa.; and (3) one year of full-time service to [   ] Legal Services.

By order dated October 22, 1982, the Supreme Court of Pennsylvania suspended respondent from the practice of law and ordered that the matter be referred to the Disciplinary Board pursuant to rule 214(f), Pa.R.D.E.

On November 1, 1982, the Office of Disciplinary Counsel filed a petition for discipline charging that respondent offered the sum of $1,600 to a plaintiff witness for the purpose of inducing the witness to change his testimony against several defendants represented by respondent in a pending criminal action in the Court of Common Pleas of [   ] County.

On November 1, 1982, respondent filed a petition for stay of his suspension. In a per curiam decision, the Supreme Court of Pennsylvania denied respondent's petition on December 6, 1982. On December 13, 1982, respondent filed a statement of compliance pursuant to rule 217(d), Pa.R.D.E.

On July 29, 1982, respondent filed notice of appeal with the Superior Court of Pennsylvania. In an order and opinion dated September 2, 1983, the

1. Act of December 6, 1972, P.L. 1482, §1, 18 Pa.C.S. §4907 was repealed by the Act of December 4, 1989, P.L. 1097, §2. The offense now appears at 18 Pa.C.S. §4952. See *Commonwealth v. [Respondent]*, [   ].

Superior Court reversed the charges on the grounds of insufficient evidence. *Commonwealth v. [Respondent]*. By order of the Supreme Court of Pennsylvania dated October 20, 1983, respondent was reinstated to the practice of law pursuant to rule 214(e), Pa.R.D.E. Thereafter, respondent moved from Pennsylvania to Wisconsin.

The commonwealth filed a petition for allowance of appeal in the Supreme Court of Pennsylvania on December 12, 1983. The petition was granted on February 21, 1984. By order and opinion dated April 3, 1985, the Pennsylvania Supreme Court reversed the Superior Court decision of September 2, 1983 on the grounds that the evidence was sufficient to support the conviction; reinstated the judgment of sentence; and remanded the case to the Superior Court for disposition of respondent's remaining appellate claims. *Commonwealth v. [Respondent]*, [   ].

On remand, by order and opinion dated November 29, 1985, the Superior Court reversed and remanded for a new trial on the grounds that the jury which convicted respondent was improperly influenced by a court officer. *Commonwealth v. [Respondent]*, [   ].

The commonwealth filed a second petition for allowance of appeal on December 30, 1985. The Supreme Court of Pennsylvania again granted the petition and in an order and opinion filed on November 10, 1986, the Supreme Court reinstated the conviction on the grounds that no prejudicial communication had occurred between the trial court's crier and the two jurors. *Commonwealth v. [Respondent]*, [   ].

By order dated March 6, 1987, the Supreme Court of Pennsylvania reinstated the judgment of sentence and referred the matter to the Disciplinary Board pursuant to rule 214(f), Pa.R.D.E.

Among other claims, including a civil rights and tort action against all persons involved in the investigation and prosecution of respondent for witness tampering, respondent petitioned the Federal District Court to enjoin further prosecution and disciplinary proceedings. The court dismissed the entire complaint with leave to file an amended complaint. *[Respondent v. Commonwealth,* [   ].

Thereafter, Judge [A] modified respondent's sentence to require that respondent provide 200 hours community service in Wisconsin where respondent resided. Respondent refused to accept the transfer of sentence to Wisconsin and again asserted his claim of double jeopardy. Judge [A] found respondent in violation of his probation that he stay within a 100-mile radius of [   ], Pa. and ordered respondent's extradition from Wisconsin on June 29, 1987.

On June 14, 1988, the Vilas County Circuit Judge in Wisconsin ordered respondent's extradition to Pennsylvania. Respondent appealed to the Wisconsin Appellate Court which affirmed the lower court's order on March 7, 1989. The Wisconsin Supreme Court denied respondent's request for review. [   ] *State v. ex rel. [Respondent] v. [B]* ([   ]).

On August 3, 1989, respondent filed a petition for writ of certiorari to the Supreme Court of the United States claiming double jeopardy. The petition, captioned *State of Wisconsin ex rel. [Respondent] v. [B], Sheriff of Vilas County, Wisconsin,* was denied by order of the Supreme Court of the United States dated October 2, 1989.

In the interim, on April 20, 1988, the matter was referred to Hearing Committee [   ] comprised of [   ]. A hearing was scheduled for November 30, 1988 and notice of the hearing along with a letter from the Office of Disciplinary Counsel stating their

position was personally served upon respondent by a deputy sheriff of Vilas County, Wisconsin on October 21, 1988.

By letter dated November 23, 1988 addressed to the hearing committee chairperson, respondent contested the jurisdiction of the Disciplinary Board. Respondent failed to appear at the hearing held on November 30, 1988. The hearing committee filed its report on June 19, 1989 recommending disbarment.

On July 12, 1989, respondent, pro se, filed a brief on exceptions to the report and recommendation of the hearing committee and requested oral argument. Respondent argued that the Disciplinary Board lacked jurisdiction on the grounds of double jeopardy and therefore, the disciplinary proceeding should be dismissed.

On July 20, 1989, the Office of Disciplinary Counsel filed a reply brief opposing exceptions asserting that the Disciplinary Board has jurisdiction to recommend the appropriate discipline and respondent's conduct is sufficiently egregious to warrant disbarment.

Oral argument was scheduled for September 13, 1989 before a three-member review panel of the Disciplinary Board consisting of [   ]. On September 8, 1989, respondent filed a letter with the Disciplinary Board in which he waived oral argument and requested the board to consider his written submissions challenging the board's jurisdiction on grounds of acquittal.

The matter was adjudicated by the Disciplinary Board at its scheduled meeting on September 15, 1989.

## FINDINGS OF FACT

In June 1980, Teamster Local 115 was engaged in a campaign to organize workers at the [C] Cab Company in [ ]. The workers at the [C] Cab Company went out on strike, at the instigation of the Teamsters, and set up a picket line. One of the workers, [D], a cab driver, became disenchanted with the Teamsters' efforts and crossed the picket line. On June 27, 1980, while driving a cab, [D] was pursued and assaulted by five union members. [D] suffered injuries and filed a criminal complaint against those five individuals.

Subsequently, [D] met with a business agent of Local 115 to discuss the incident. At that time [D] had decided to withdraw the criminal charges in the interest of laying to rest his difficulties with fellow employees, and informed the agent of this fact. [D] sought compensation for the injuries he sustained in the assault, and a settlement in the amount of $1,600 was agreed upon. This sum was to be paid to [D] upon his written release of the union from civil liability and a withdrawal of the criminal charges.

In the ensuing weeks, [D] became impatient with the union's failure to deliver the $1,600. Hence, on several occasions during August and September 1980, [D] met with respondent, the union's legal counsel, to inquire as to the reasons that the settlement funds had not been paid. During that time, respondent also represented one or more of the union members against whom criminal charges had been filed.

On August 21, 1980, respondent delivered to [D] the sum of $400 as partial payment of $1,600 owed under the settlement that had been agreed upon by [D] and the union's business agent. Subsequent to

this meeting with respondent, [D] decided not to withdraw the criminal charges. However, [D] did not inform respondent of this decision.

On September 22, 1980, [D] met with members of the district attorney's office and consented to wear a hidden recording device to record his conversations with respondent. Later that same day, [D] met with respondent on two occasions, and the tape recordings of those meetings form the heart of the case against respondent. In summary, the conversations revealed that [D] was to be paid the sum of $1,600 for a release of civil liability, but with the threat that the full amount of the funds would not be paid until [D] had "cooperated" by dismissing the criminal charges. The "cooperation" required [D] to change his testimony and indicate that his earlier accounts of the assault had been exaggerated or that his memory of the assault had failed. In addition, there was a discussion of the possibility of [D] ignoring a subpoena in order to elude having to testify at trial. For a complete description of the two conversations which [D] had with respondent on September 22, 1980 and other surrounding facts see *Commonwealth v. [Respondent],* [   ].

It should be noted that the taped conversations secured by [D] were obtained as a result of [D] telling lies to respondent which produced further conversation from respondent. Finally, [D] did in fact receive the agreed settlement sum and the union members involved in the assault on [D] were prosecuted on the criminal charges.

## CONCLUSIONS OF LAW

Respondent's conduct has constituted a violation of the following Disciplinary Rules of the Code of Professional Responsibility:

(A) D.R. 1-102(A)(1)—which prohibits the violation of a disciplinary rule (rule 203(b)(3), Pa.R.D.E.);

(B) D.R. 1-102(A)(3) — which prohibits illegal conduct involving moral turpitude;

(C) D.R. 1-102(A)(6) — which prohibits conduct that adversely reflects on the fitness of respondent to practice law; and

(D) D.R. 7-102(A) (6) - which prohibits an attorney, in his representation of a client, from participating in the creation or preservation of evidence when he knows, or it is obvious, that the evidence is false.

## DISCUSSION

The sole issue before this board is the extent of discipline to be imposed upon respondent who was convicted by a jury in the Court of Common Pleas of [   ] County of tampering with a witness in violation of 18 Pa.C.S. §4907. Despite a lengthy appeal process, the Supreme Court of Pennsylvania upheld the conviction. *Commonwealth v. [Respondent]*, [   ], *Commonwealth v. [Respondent]* [   ]. Pursuant to rule 203(b)(1), conviction of a crime defined under Enforcement Rule 214 is an independent ground for the imposition of discipline. Rule 214(c), Pa.R.D.E. states that "[a] certificate of conviction of an attorney for such a crime shall be conclusive evidence of the commission of that crime in any disciplinary proceeding against the attorney based upon the conviction." The Disciplinary Board has jurisdiction of this matter pursuant to rule 201(a)(3), Pa.R.D.E.

The Office of Disciplinary Counsel argues that respondent's conduct is sufficiently egregious to warrant disbarment. Respondent, pro se, contends that the disciplinary proceedings against respon-

dent should be dismissed on the grounds that the Disciplinary Board lacks jurisdiction. Respondent argues that the decision of the Superior Court of Pennsylvania in *Commonwealth v. [Respondent],* [ ], was an "acquittal" and since he was "acquitted," the reinstatement of his conviction by the Supreme Court of Pennsylvania was unconstitutional. Therefore, the argument continues, the Disciplinary Board cannot recommend the imposition of discipline.

Respondent's legal analysis is defective. First, by denying respondent's petition for writ of certiorari, the Supreme Court of the United States laid to rest all respondent's claims of the unconstitutionality of his conviction. Second, even if the jury in the Court of Common Pleas in [ ] County acquitted respondent of the charges (which apparently is not the case) the Disciplinary Board would still have jurisdiction to conduct disciplinary proceedings against respondent. It is now well-established that the constitutional protection of double jeopardy afforded defendants in criminal cases does not apply to disciplinary proceedings. See *In re Oxman,* 496 Pa. 534, 437 A.2d 1169 (1981), citing *Office of Disciplinary Counsel v. Campbell,* 463 Pa. 472, 345 A.2d 616 (1975). "[T]he mere acquittal of a crime will not be a bar to a suspension of the attorney's right to practice or his disbarment for unprofessional conduct based upon the same acts or conduct involved." *Campbell,* citing *In re Echeles,* 430 F.2d 347, 352 (7th Cir. 1970). "Any argument which asserts that an acquittal on criminal charges bars a subsequent disciplinary proceeding ignores that nature of disciplinary actions." *Campbell.* Unlike criminal proceedings, the nature of disciplinary sanctions are not primarily punitive, but rather designed to protect the public from attorneys

who are unworthy of the public's trust. See *Office of Disciplinary Counsel v. Tumini,* 499 Pa. 284, 288, 453 A.2d 310, 312 (1982). "The punishment of an offending member of the profession is indeed a serious matter, but it is incidental to the [primary purpose] of protecting the public." *In re Oxman,* 496 Pa. 534, 437 A.2d 1169 (1981).

Following the suggestion of the Supreme Court of Pennsylvania in *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 512 A.2d 607 (1986), the board's inquiry, in light of respondent's conviction of a crime, will focus on whether respondent's character, as shown by his conduct, make him unfit to practice law from the standpoint of protecting the public and the courts. Respondent is an attorney who has been convicted of employing an offer of pecuniary benefit in an attempt to change the testimony of a witness in a criminal matter in which respondent represented the defendants. Specifically, the conversations between the witness, [D] and respondent "reveal that [D] was to be paid the sum of $1,600 *ostensibly* for a release of civil liability, but with the threat that the full amount of the funds would not be paid until [D] had 'cooperated' by doing whatever was necessary to obtain dismissal of the criminal charges." *Commonwealth v. [Respondent],* [ ]. (emphasis in original) Respondent instructed [D] to testify falsely that his memory had failed, that he had instigated the affray with the union members, and that his earlier accounts of the assault had been exaggerated. In addition, there was a discussion of the possibility of [D] ignoring a subpoena in order to elude having to testify at trial. Also, respondent agreed to "sweeten the pot a little" by securing some extra money for [D]. However, respondent warned [D] not to "push his luck" because [D] was

dealing with some "very dangerous" people who "play with knuckles," and respondent characterized himself as one of those "honorable" but "rough" people.

Respondent's conduct has seriously eroded the fundamental view that the court system is a system of justice unscathed by outside influence. Respondent has neglected his duty as a court officer and also has breached the public's trust and confidence in the court system and the legal profession.

Because respondent's conduct indicates a deplorable disregard for the integrity of the judicial process, the board concludes that respondent is unworthy of the public trust and confidence vested in him as a member of the legal profession.

## RECOMMENDATION

The Disciplinary Board unanimously recommends that the respondent be disbarred. The board recommends further that respondent be ordered to pay the costs of investigating and prosecuting this matter pursuant to rule 208(g), Pa.R.D.E.

Messrs. Brown and Gilardi and Ms. Heh did not participate in the adjudication.

## ORDER

And now, February 5, 1990, upon consideration of the report and recommendation of the Disciplinary Board dated November 30, 1989, it is hereby ordered that [respondent] be and he is disbarred from the bar of this commonwealth, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to rule 208(g), Pa.R.D.E.