## In re Anonymous No. 3 D.B. 93

Disciplinary Board Docket no. 3 D.B. 93.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

POWELL, *Member,* December 19, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

The petition for discipline was filed on January 15, 1993.

On February 18, 1993, respondent filed a motion to dismiss and answer to petition for discipline.

On February 23, 1993, the matter was referred to Hearing Committee [　] consisting of [　], Esquire, Chairperson, [　], Esquire and [　], Esquire.

On March 3, 1993, respondent filed a supplemental motion to dismiss the petition for discipline.

On March 25, 1993, petitioner filed a response to respondent's motion and supplemental motion to dis-

miss and a memorandum of law to the Hearing Committee.

Respondent filed a third motion to dismiss the petition based on prejudicial delays in hearings in determining the allegations on April 7, 1993.

On April 8, 1993, petitioner filed an answer to respondent's motion to dismiss the petition based on prejudicial delays in hearings and determining the allegations.

A pre-hearing conference was held on June 30, 1993, and a hearing was also held on June 30, 1993, and continued to August 30, 1993, which hearing was held and also continued. The continued hearing was held on October 25, 1993.

On November 23, 1993, petitioner filed a brief to the Hearing Committee.

On January 27, 1994, respondent filed a brief to the Hearing Committee.

The Hearing Committee filed its report on March 5, 1994. The majority recommended suspending the respondent for a period of one year and one day. The dissent recommended dismissal of the petition.

On March 13, 1994, petitioner advised that no exceptions will be filed to the report of the Hearing Committee. Respondent filed no exceptions within the prescribed time.

The matter was adjudicated by the board at its meeting on June 22, 1994.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters

involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [    ], was born in 1946 and was admitted to the practice of law in the Commonwealth of Pennsylvania in 1982.

(3) Respondent was placed on temporary suspension by order of the Supreme Court dated June 18, 1993, in an unrelated matter.

(4) Complainant, [A], during 1985 and 1986 had two matters pending before the Social Security Administration of the U.S. Department of Health and Human Services—(1) a disability review based on a court decision affecting him as a member of a class, (N.T. III, p. 30) and a claim by the Social Security Administration against him for overpayment of benefits to his ex-wife. (N.T. III, p. 28.)

(5) Complainant retained respondent to represent him in regard only to the overpayment issue. (N.T. III, p. 28.) Complainant did not ask respondent to represent him in the disability matter. (N.T. III, p. 30.)

(6) Respondent and complainant executed a form SSA-1696-U4, entitled "appointment of representative," dated October 17, 1986. Respondent completed and signed section 3, "waiver of fee," in which respondent waived his right to charge and collect a fee for the representation. (Exh. P-1.)

(7) The representation ended on February 19, 1987, when complainant, accompanied by respondent, tendered a check for $2,300 to the Social Security Administration in satisfaction of the SSA's claim against complainant. (N.T. III, p. 52.)

(8) Complainant never agreed to pay respondent a fee for respondent's services. (N.T. III, p. 57.)

(9) Respondent filed a completed SSA-1560-U4 form, entitled "petition to obtain approval of a fee for representing a claimant before the Social Security Administration" ("fee petition") with the SSA. Respondent claimed $10,012.50 as a fee for his services. (Exh. P-2.)

(10) The detail respondent provided on the fee petition was not related to the representation. (N.T. III, pp. 38-53.) Furthermore, these items were not supported by respondent's own documentation. (N.T. I, pp. 212-214.)

(11) Respondent advised [A] that the payment of his fee would not interfere with [A's] receipt of benefits, as there was a general fund available for the purpose of paying his fees. (N.T. III, pp. 57-58.)

(12) The SSA's Attorney Fee Branch reviewed the fee petition on or about December 16, 1987 and reduced the fee to $3,500. (N.T. I, p. 118; exh. P-3.)

(13) On or about January 15, 1988, respondent contacted SSA and advised that [A] refused to pay the fee and requested SSA to withhold a portion of [A's] monthly benefits to pay the fee. (N.T. I, pp. 120-121.)

(14) On or about March 24, 1988, SSA complied with respondent's request and directed payment to him in the amount of $3,500, with recovery to be made by deduction from [A's] benefits. (N.T. I, pp. 120-121.)

(15) Thereafter, respondent received a $3,500 check from SSA. (Respondent's motion to dismiss, paragraph no. 12.)

(16) By letter dated May 10, 1988, [A] advised respondent that SSA was under no obligation to make

a payment from any general fund and requested that respondent rescind his fee request. (N.T. III, pp. 35-36, exh. P-10.)

(17) On or about August 10, 1988, the SSA's Office of Hearings and Appeals sent respondent a letter requesting respondent explain the discrepancy between the fee waiver and the fee petition. (Exh. P-3, P-3A.)

(18) Respondent claimed that complainant and respondent executed a new fee agreement after the fee waiver, and sent a photocopy of the purported agreement to the Office of Hearings and Appeals. (N.T. I, p. 125.)

(19) Respondent claimed that the original of the purported fee agreement had been sent to a district SSA office. (N.T. I, p. 425.) This document has never been located. *Id.*

(20) The Office of Hearings and Appeals charged respondent with violations of the following federal regulations: 20 C.F.R. §404.1740(a), which provides that no attorney shall, with intent to defraud, in any manner wilfully and knowingly deceive or mislead any claimant regarding benefits or other rights under the Social Security Act; and 20 C.F.R. §404.1740(c), which prohibits an attorney from making any false statement, representation, or claim about any material fact affecting the rights of any person under Title II of the Social Security Act. (N.T. I, p. 127.)

(21) A hearing was held before an agency Administrative Law Judge, [B], on May 16, 1990 and May 17, 1990. Respondent was present and had the opportunity to cross-examine complainant on these matters, which he did. (N.T. I, p. 128.)

(22) The administrative law judge determined that a violation of 20 C.F.R. §404.1740(c) had occurred, and sanctioned respondent by imposing a one year suspension of respondent's privilege to practice before the SSA. (Exh. P-4.)

(23) Respondent appealed the administrative law judge's decision to an appeals council of the SSA which affirmed the decision of the administrative law judge on May 16, 1991. (Exh. P-5.)

(24) Respondent's one year suspension before the SSA was effective on May 16, 1991.

(25) Respondent filed an appeal to the decision of the appeals council with the United States District Court for the District of Columbia, and the United States Court of Appeals for the District of Columbia Circuit, but the attempt failed for lack of jurisdiction. (Exhs. P-6 and P-7.)

(26) Respondent's one year suspension before the SSA was automatically terminated on May 16, 1992.

(27) Respondent did not return the $3,500 the SSA paid to him. (N.T. I, p. 125.)

(28) Respondent was not present at either the August 30, 1993 or October 25, 1993 disciplinary hearings. (N.T. II, p. 2; N.T. III, p. 2.) The Office of Disciplinary Counsel and the Hearing Committee received no direct communication from the respondent regarding these absences. Faxes were received from respondent's wife alleging medical reasons for his absence from the proceedings; however, no supporting documents were provided. (See *e.g.,* exh. P-16.) Respondent received notice to his mailing address of record in the attorney registration records and additional attempts at service were made to all addresses where respondent was known to receive mail. (Exh. P-22.)

## III. CONCLUSIONS OF LAW

The board concludes that the respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(4)—which involves conduct involving dishonesty, fraud, deceit or misrepresentation;

(b) D.R. 1-102(A)(6)—which involves conduct that adversely reflects on an attorney's fitness to practice law.

## IV. DISCUSSION

Although the respondent vigorously opposed these proceedings, the facts are relatively simple. The respondent agreed to represent the complainant in one discrete matter before the Social Security Administration. He executed an agency form waiving his right to collect a fee for that representation. Following the representation, he filed a fee petition in which he claimed he was owed over $10,000 by complainant for the services rendered. When confronted with the fact of the fee waiver, respondent produced only a poor photocopy of an alleged fee agreement. The original of this fee agreement was never produced by respondent or found by the SSA within its files. Complainant credibly and consistently denied ever agreeing to any fee agreement. (N.T. III, pp. 31, 54, 57, 74.) Complainant further testified he never signed the fee agreement alleged by respondent, entered as exhibit P-24. (N.T. III, p. 79.)

After investigation by the SSA's council, charges were instituted against the respondent. A hearing was held before an administrative law judge, in which respondent participated. The evidence which respondent produced only served to reenforce the SSA council's case against

respondent. (N.T. I, pp. 212-24.) The documentation provided by respondent in support of the fee petition did not concern in any manner the representation before the Social Security Administration. *Id.*

In sum, the respondent has failed to produce any evidence which rebuts the evidence petitioner presented establishing that respondent misrepresented the nature, extent and worth of his representation before the SSA.

Affirmative misrepresentations by attorneys have always been heavily censured in this Commonwealth. See *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 82, 619 A.2d 1054, 1056 (1993); cf. *Montgomery County Bar Association v. Hecht,* 456 Pa. 13, 317 A.2d 597 (1974). In *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 201, 425 A.2d 730, 733 (1981), the court, in reviewing a case involving a lawyer who testified falsely in a proceeding against him, stated "The purpose of the Code of Professional Responsibility and the Rules of Disciplinary Enforcement is to protect the public, the profession and the courts. Whenever an attorney is dishonest, that purpose is served by disbarment. Rehabilitation may occur, but only after a sanction is imposed, and primary responsibility for rehabilitation rests with the sanctioned attorney." (footnote omitted) *Grigsby,* however, can be distinguished from this case in that the attorney in *Grigsby* engaged in repeated acts of misconduct. The respondent in the present case has engaged in only one, albeit a continuing act of dishonesty regarding the fee petition.

Mention must be made of the numerous attacks on the legality and appropriateness of these proceedings by the respondent. Respondent's pre-hearing motions alleged a variety of defects in due process, fundamental fairness, etc. See respondent's motion to dismiss and respondent's supplemental motion to dismiss. "It is now

well-established that not all constitutional protections afforded defendants in criminal cases apply to disciplinary proceedings." *In re Oxman,* 496 Pa. 534, 540, 437 A.2d 1169, 1172 (1981). (citations omitted) The Pennsylvania Supreme Court most recently discussed due process in *Office of Disciplinary Counsel v. Duffield.* The court said that because the disciplinary system procedure "does not involve commingling of prosecutorial and adjudicative functions[,] [d]ue process is therefore not violated." *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 490, 644 A.2d 1186, 1188 (1994). In addition, no legal authorities were cited and no evidence presented as to how the proceedings violated respondent's rights. The Hearing Committee decided, and the board reaffirms, that these motions are completely without merit.

Respondent also failed to attend two of the hearings before the Hearing Committee in this matter. The hearing was continued from June 30, 1993 to August 30, 1993. At the August 30, 1993 hearing, respondent was not present and his counsel of record up to that time, was not permitted to continue the representation because his counsel had voluntarily assumed inactive status on August 27, 1993. Respondent's attorney was, therefore, unable by the rules concerning attorney activity to continue the representation.

Since the respondent was not present and his attorney was legally incapable of representing him, the Hearing Committee continued the hearing to October 25, 1993. At that time neither respondent nor any counsel designated by him appeared at that hearing. However, notices regarding both the August 30 and October 25, 1993 hearings were forwarded to respondent's last known address as recorded in the attorney's annual fee form which respondent returned, and to all known

addresses where respondent had received mail at prior times. (See *e.g.,* exh. P-22.) This included the address of his mother in [    ], in a nursing home.

We stress that despite opportunity and encouragement to give a correct address, respondent failed to provide a current address where he can be reached. However, the certified mail and the first class mail sent to the majority of these addresses were never returned as undeliverable. In addition, respondent's presence at the first hearing gives strong presumption to the inference that respondent was aware of the proceedings against him and had an opportunity had he so wished to appear.

Respondent's wife sent numerous faxes to the Disciplinary Board and the Office of Disciplinary Counsel. (Exhs. P-12, P-13, P-20, P-21.) These faxes, while included as exhibits, cannot be properly ascribed to the respondent because he did not sign them. In addition, his wife is not an attorney and, therefore, cannot represent him. The matter contained in these faxes suggested that there may have been medical reasons why respondent failed to appear at the hearings. (Exh. P-12.) However, no details were provided, and no official medical records were provided in support of the faxed statements. Therefore, the board concludes that the respondent had the opportunity either to substantiate his medical condition if it exists, or to participate in the hearing and he simply failed to do so. At the very least, the failure to appear, or properly document a medical reason for the failure, coupled with an unwillingness to supply a current address, suggests a desire to avoid cooperating with the disciplinary system. We find that there is precedent for considering respondent's subsequent failure to appear at disciplinary hearings an aggravating circumstance. *In re Anonymous No. 35 D.B. 88,* 8 D.&C.4th 344 (1990).

We believe that the respondent's disregard for the authority of the Hearing Committee and the Disciplinary Board in general should be considered as an aggravating factor.

The serious nature of the acts surrounding the misconduct warrant the imposition of a suspension. In addition, because of the many questions which respondent's behavior raises about his general fitness to practice law, the board believes the petitioning process provided in Rule 218(c)(3)(i), Pa.R.D.E., will serve to properly protect the courts and the public. Accordingly, the board recommends that respondent be suspended for a period of one year and one day.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectively recommends that respondent, [    ] be suspended from the practice of law for a period of one year and one day.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board members Kerns, Lieber and McGovern did not participate in the adjudication.

## ORDER

And now, January 13, 1995, upon consideration of the report and recommendations of the Disciplinary Board dated December 19, 1994, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of one year and

one day and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro is sitting by designation.